HORTON *v.* LIBERTY MUTUAL INSURANCE CO.

No. 478.   Argued May 3, 1961.—Decided June 12, 1961.

*Joe H. Tonahill* and *William VanDercreek* argued the cause and filed a brief for petitioner.

*Howell Cobb* argued the cause for respondent.   With him on the brief was *Major T. Bell.*

MR. JUSTICE BLACK delivered the opinion of the Court.

This case raises questions under that part of 28 U. S. C. § 1332, as amended in 1958,[1] which grants jurisdiction to United States District Courts of all civil actions between citizens of different States "where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs . . . ."

Petitioner, Horton, was injured while working for an employer in Texas insured by the respondent, Liberty Mutual Insurance Company. Pursuant to the Texas Workmen's Compensation Law,[2] petitioner filed a claim with the Texas Industrial Accident Board against his employer and the respondent insurance company alleging that he had been totally and permanently incapacitated and claiming the maximum recovery under the law of $35 per week for 401 weeks, or a total of $14,035. After administrative hearings the Board decided that petitioner would be disabled for only 30 weeks and accordingly made an award of only $1,050. Section 5 of Art. 8307 of the Texas Workmen's Compensation Law permits either the employee or the insurance company, if dissatisfied with an award, to "bring suit in the county where the injury occurred to set aside said final ruling," in which event the issues shall be determined "upon trial de novo, and the burden or [sic] proof shall be upon the party claiming compensation," but in no event shall the court allow recovery in excess of the statutory maximum of $14,035. Acting under this provision of state law, the respondent, on April 30, 1959, the very day of the award, filed this diversity case in the United States District Court to set aside the award, alleging that petitioner had claimed, was claiming and would claim $14,035, but denying that petitioner was entitled to recover anything at all under Texas

---

[1] Act of July 25, 1958, 72 Stat. 415.

[2] Vernon's Tex Ann. Civ. Stat., Arts. 8306–8309.

law. One week later the petitioner, who also was dissatisfied with the award, filed an action in the state court to set aside the Board's award and to recover in that court the full $14,035. After that, petitioner moved to dismiss the respondent's federal court suit on the ground that the value of the "matter in controversy" was only the amount of the award, $1,050, and not the amount of his claim of $14,035, although he also contemporaneously filed, subject to his motion to dismiss, what he designated as a compulsory counterclaim [3] for the full amount he had claimed before the Texas Board and in his Texas State Court suit. The District Court held that the "matter in controversy" in the federal action was only the amount of the $1,050 award that the respondent company had asked the court to set aside. In so holding the District Court relied on *National Surety Corp.* v. *Chamberlain*,[4] in which another District Court in Texas had reached the same conclusion as to jurisdiction largely on the basis of what it deemed to have been the purpose of Congress in enacting the 1958 amendment to 28 U. S. C. § 1332, which amendment rather severely cut down the jurisdiction of Federal District Courts, particularly in state workmen's compensation cases. The Court of Appeals reversed,[5] and we granted certiorari to decide the important jurisdictional questions raised under the 1958 amendment.[6]

For reasons to be stated, we hold that the District Court has jurisdiction of the controversy.

*First.* It is true, as the *Chamberlain* opinion pointed out, that the purpose and effect of the 1958 amendment

---

[3] With exceptions not here relevant, Rule 13 (a) of the Federal Rules of Civil Procedure requires a party to file a counterclaim arising out of the transaction or occurrence that is the subject of the opposing party's claim.

[4] 171 F. Supp. 591.

[5] 275 F. 2d 148.

[6] 364 U. S. 814.

were to reduce congestion in the Federal District Courts partially caused by the large number of civil cases that were being brought under the long-standing $3,000 jurisdictional rule. This effort to reduce District Court congestion followed years of study by the United States Judicial Conference and the Administrative Office of the United States Courts, as well as by the Congress.[7] To accomplish this purpose the 1958 amendment took several different but related steps. It raised the requisite jurisdictional amount from $3,000 to $10,000 in diversity and federal question cases; it provided that a corporation is to be deemed a citizen not only of the State by which it was incorporated but also of the State where it has its principal place of business; and, most importantly here, it also for the first time forbade the *removal* of state workmen's compensation cases from state courts to United States District Courts. By granting district judges a discretionary power to impose costs on a federal court plaintiff if he should "recover less than the sum or value of $10,000," the amendment further manifested a congressional purpose to discourage the trying of suits involving less than $10,000 in federal courts. In discussing the question of state workmen's compensation cases, the Senate Report on the amendment evidenced a concern not only about the problem of congestion in the federal courts, but also about trial burdens that claimants might suffer by having to go to trial in federal rather than state courts due to the fact that the state courts are likely to be closer to an injured worker's home and may also

---

[7] See H. R. Rep. No. 1706, 85th Cong., 2d Sess.; S. Rep. No. 1830, 85th Cong., 2d Sess.; Hearings on H. R. 2516 and H. R. 4497, Subcommittee of House Committee on the Judiciary, 85th Cong., 1st Sess. With particular reference to the provision barring removal of state workmen's compensation cases, see 104 Cong. Rec. 12689–12690; S. Rep. No. 1830, *supra,* p. 9; Annual Report of the Proceedings of the Judicial Conference of the United States, 1957, p. 15.

provide him with special procedural advantages in workmen's compensation cases.[8]

The foregoing are some of the appealing considerations that led the District Court to conclude that it would frustrate the congressional purpose to permit insurers to file workmen's compensation suits in federal courts when Congress had deliberately provided that such suits could not be removed to federal courts if filed by claimants in state courts. But after the most deliberate study of the whole problem by lawyers and judges and after its consideration by lawyers on the Senate Judiciary Committee in the light of statistics on both removals and original filings,[9] Congress used language specifically barring removal of such cases from state to federal courts and at the same time left unchanged the old language which just as specifically permits civil suits to be filed in federal courts in cases where there are both diversity of citizenship and the prescribed jurisdictional amount. In this situation we must take the intent of Congress with regard to the filing of diversity cases in Federal District Courts to be that which its language clearly sets forth. Congress could very easily have used language to bar filing of workmen's compensation suits by the insurer as well as removal of such suits, and it could easily do so still. We therefore hold that under the present law the District Court has jurisdiction to try this civil case between citizens of different States if the matter in controversy is in excess of $10,000.

*Second.* We agree with petitioner that determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards,[10] although the federal courts must, of course, look to state law to determine the nature

---

[8] S. Rep. No. 1830, 85th Cong., 2d Sess., pp. 8–9.

[9] See, *id.*, p. 8.

[10] See, *e. g.*, *Shamrock Oil Corp.* v. *Sheets,* 313 U. S. 100, 104.

and extent of the right to be enforced in a diversity case. It therefore is not controlling here that Texas has held that the crucial factor for allocating its cases among different state courts on an amount-in-controversy basis is the amount originally claimed before its State Compensation Board.[11]

The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed "in good faith."[12] In deciding this question of good faith we have said that it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[13] The complaint of the respondent company filed in the District Court, while denying any liability at all and asking that the award of $1,050 against it be set aside, also alleges that petitioner Horton has claimed, now claims and will claim that he has suffered total and permanent disability and is entitled to a maximum recovery of $14,035, which, of course, is in excess of the $10,000 requisite to give a federal court jurisdiction of this controversy. No denial of these allegations in the complaint has been made, no attempted disclaimer or surrender of any part of the original claim has been made by petitioner, and there has been no other showing, let alone a showing "to a legal certainty," of any lack of good faith on the part of the respondent in alleging that a $14,035 claim is in controversy. It would contradict the whole record as well as the allegations of the complaint to say that this dispute involves only $1,050. The claim before

[11] *Booth* v. *Texas Employers' Ins. Assn.,* 132 Tex. 237, 252, 123 S. W. 2d 322, 331.

[12] *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.,* 303 U. S. 283, 288, and cases there cited.

[13] *Id.,* at 289. See also *Bell* v. *Preferred Life Assurance Society,* 320 U. S. 238, 240; *Aetna Casualty Co.* v. *Flowers,* 330 U. S. 464, 468.

the Board was $14,035; the state court suit of petitioner asked that much; the conditional counterclaim in the federal court claims the same amount. Texas law under which this claim was created and has its being leaves the entire $14,035 claim open for adjudication in a *de novo* court trial, regardless of the award. Thus the record before us shows beyond a doubt that the award is challenged by both parties and is binding on neither; that petitioner claims more than $10,000 from the respondent and the respondent denies it should have to pay petitioner anything at all. No matter which party brings it into court, the controversy remains the same; it involves the same amount of money and is to be adjudicated and determined under the same rules. Unquestionably, therefore, the amount in controversy is in excess of $10,000.

*Third.* Petitioner contends, however, that even though the amount in controversy is more than $10,000, the suit filed by the company is nothing more than an appeal from a state administrative order, that a Federal District Court has no appellate jurisdiction and that the dismissal of the case by the District Court therefore is supportable on that ground. This contention rests almost entirely on *Chicago, R. I. & P. R. Co.* v. *Stude,* 346 U. S. 574, 581, which held that a United States District Court was without jurisdiction to consider an appeal "taken administratively or judicially in a state proceeding." Aside from many other relevant distinctions which need not be pointed out, the *Stude* case is without weight here because, as shown by the Texas Supreme Court's interpretation of its compensation act:

> "The suit to set aside an award of the board is in fact a suit, not an appeal. It is filed as any other suit is filed and when filed the subject matter is withdrawn from the board." [14]

---

[14] *Booth* v. *Texas Employers' Ins. Assn.,* 132 Tex. 237, 246, 123 S. W. 2d 322, 328.

It is true that as conditions precedent to filing a suit a claim must have been filed with the Board and the Board must have made a final ruling and decision. But the trial in court is not an appellate proceeding. It is a trial *de novo* wholly without reference to what may have been decided by the Board.[15]

The Court of Appeals was right in holding that the District Court had jurisdiction of this case and its judgment is

*Affirmed.*

MR. JUSTICE CLARK, with whom THE CHIEF JUSTICE, MR. JUSTICE BRENNAN and MR. JUSTICE STEWART join, dissenting.

The Court turns a new furrow in the field of diversity jurisdiction today and, in so doing, plows under a rule of almost a quarter of a century's standing—the rule that in determining jurisdiction, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Indemnity Co.* v. *Red Cab Co.*, 303 U. S. 283, 288 (1938). Here the respondent Insurance Company filed suit "to set aside" an award of $1,050 given Horton by the Texas Industrial Accident Board. The Court, instead of testing the jurisdictional amount by this sum, looks instead to allegations of the Insurance Company that Horton, the defendant in the action, *"will claim* the sum

---

[15] The character of the lawsuit is further illuminated by decisions of the Texas Supreme Court holding that the administrative award becomes vacated and unenforceable once the court has acquired jurisdiction of the cause and the parties even if a voluntary nonsuit is taken and the case dismissed without judgment on the merits. *Zurich General Accident Co.* v. *Rodgers*, 128 Tex. 313, 97 S. W. 2d 674; *Texas Reciprocal Ins. Assn.* v. *Leger*, 128 Tex. 319, 97 S. W. 2d 677. This makes it all the more clear that the matter in controversy between the parties to the suit is not merely whether the award will be set aside since the suit automatically sets it aside for determination of liability *de novo.*

of [$14,035] . . . ." (Emphasis added.) This is the first time the Court has let a plaintiff affix jurisdiction by prophesying what the defendant would or might claim, rather than by stating what the plaintiff itself did claim. In so generously construing the statute, the Court confounds the test heretofore applied in diversity cases. It also nullifies the result of "years of study by the United States Judicial Conference and the Administrative Office of the United States Courts, as well as by the Congress," *ante,* p. 351, in the adoption of the Act of July 25, 1958, 72 Stat. 415, increasing the jurisdictional amount in diversity cases to $10,000. Once again the United States District Courts in Texas will be flooded by compensation cases,[1] and the Congress once again will be obliged to amend the diversity statute. Moreover, today's decision practically wipes out the long-existing distinction between declaratory judgment actions and conventional suits. See 28 U. S. C. § 2201. For these reasons I must dissent.

Petitioner, an injured workman, filed a claim under the Texas Workmen's Compensation Act before the Texas Industrial Accident Board for the maximum allowable recovery, $14,035 (401 weeks at $35 per week). The Board, after a hearing, awarded petitioner $1,050 ($35 per week for 30 weeks). Within hours of the award, respondent, the compensation insurer, literally raced into Federal District Court and filed suit to set aside the Board's decision. The diversity action was brought pursuant to Vernon's Tex. Ann. Civ. Stat., Art. 8307, § 5, which allows the issues to be determined "upon trial de novo, [where] . . . the burden or [*sic*] proof shall be upon the party claiming compensation." Upon petitioner's motion, the District Court dismissed the action for lack of jurisdiction. The Court of Appeals reversed.

---

[1] In 1957, 2,147 workmen's compensation cases were commenced in the United States District Courts of Texas. S. Rep. No. 1830, 85th Cong., 2d Sess. 8.

The jurisdictional limits of Federal District Courts are bounded on one side by the Constitution and on the other by the enactments of Congress. Only that judicial power expressly granted by statute may be exercised by the *nisi prius* courts. *Lockerty* v. *Phillips,* 319 U. S. 182 (1943); *Kline* v. *Burke Construction Co.,* 260 U. S. 226 (1922); *Sheldon* v. *Sill,* 8 How. 441 (1850). In the light of such history, this Court has repeatedly held that such jurisdiction is to be narrowly interpreted. "The policy of the [diversity] statute calls for its strict construction." *Healy* v. *Ratta,* 292 U. S. 263, 270 (1934). See *Indianapolis* v. *Chase National Bank,* 314 U. S. 63 (1941); *St. Paul Indemnity Co.* v. *Red Cab Co., supra.*

The argument that the federal court, in diversity cases, is just another state court is inapposite here. As the Court points out, the determination of whether a case comes within the jurisdiction of a District Court "is a federal question to be decided under federal standards." *Ante,* p. 352. The jurisdictional statute, "which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil Corp.* v. *Sheets,* 313 U. S. 100, 104 (1941). Regardless of the method used by the Texas courts to determine the jurisdictional amounts for such cases, we must scrupulously apply the standard set by Congress for federal courts.

The statute conferring jurisdiction on District Courts in suits between parties of diverse citizenship limits it to those actions "where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs . . . ." 28 U. S. C. § 1332 (a). In most cases, the determination of the amount in controversy is exceedingly simple, *e. g.,* liquidated damages. However, where the relief sought is difficult to define in terms of money, or is of differing value to the parties, the statute does not admit

of ready application. To clarify these situations, this Court, in *St. Paul Indemnity Co.* v. *Red Cab Co., supra,* at 288, stated: "[U]nless the law gives a different rule, *the sum claimed by the plaintiff controls* if the claim is apparently made in good faith." (Emphasis added.)

The application of the foregoing rules to the problem here results in a simple solution. At the time respondent filed its complaint, there was enforceable against it a liability in the amount of $1,050. If petitioner defaulted, the District Court would set aside the Board award. If respondent lost and petitioner filed no counterclaim, the judgment could only be for $1,050. It was only if petitioner counterclaimed for an amount in excess of the jurisdictional amount of $10,000, that respondent could have controverted a claim cognizable in federal court. It seems impossible to avoid the conclusion that the Court is allowing diversity jurisdiction to be predicated upon a counterclaim which might possibly be filed by petitioner. Even a "disclaimer or surrender of [a] . . . part of the original claim" would not change the Court's insistence upon looking to the alleged counterclaim if that were more than the respondent's claim, for the jurisdictional minimum. Apparently the Court would require a "denial of these allegations" that petitioner will claim an amount in excess of the jurisdictional limit before considering the respondent's prayer to set aside the Board's award as the source of the jurisdictional amount. *Ante,* p. 353. Not only is this in patent conflict with *St. Paul Indemnity Co.* v. *Red Cab Co., supra,* but it distorts the meaning of Rule 3, Federal Rules of Civil Procedure, which states, "[a] civil action is commenced by filing a complaint with the court." Here the Court evidently holds that if the complaint, insufficient to meet the jurisdictional standards, alleges that a possible compulsory counterclaim, sufficient to meet such standards, may be filed by the defendant, federal jurisdiction attaches. Certainly

we have never permitted a District Court to acquire jurisdiction under 28 U. S. C. § 1331 (a) [2] where the plaintiff does not allege a federal question but claims that the defendant will raise such an issue. "[W]hether a case is one [involving a federal question] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, *unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."* *Taylor* v. *Anderson,* 234 U. S. 74, 75–76 (1914). (Emphasis added.) See *Skelly Oil Co.* v. *Phillips Petroleum Co.,* 339 U. S. 667 (1950); *First National Bank* v. *Williams,* 252 U. S. 504 (1920); *Louisville & N. R. Co.* v. *Mottley,* 211 U. S. 149 (1908). To allow such a procedure in diversity cases is to unbalance the entire jurisdictional pattern.

In essence, the Court has permitted respondent to turn its suit into an action for a declaratory judgment without meeting the requirements of the Declaratory Judgment Act. 28 U. S. C. § 2201. That Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, *upon the filing of an appropriate pleading, may declare* the rights and other legal relations of any interested party seeking such declaration . . . ." (Emphasis added.)

The complaint filed in the District Court was not styled a declaratory judgment action, and it did not seek such relief. More importantly, respondent has succeeded in avoiding the element of discretion permitted by the statute. See *Brillhart* v. *Excess Ins. Co.,* 316 U. S. 491 (1942). Declaratory relief is a procedural remedy and, therefore, the construction of the Act is a federal matter.

---

[2] "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

See *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227 (1937).
Whether or not such relief should be granted does not
depend upon whether the state courts would exercise their
discretion to grant a declaratory judgment in the same
situation.[3]  Differing factors are pertinent to the discre-
tionary decisions of the two separate judicial systems,
state and federal.  In the latter system, discretionary
refusal to entertain the action frequently occurs when
the suit involves a state statute, such as the one here.
See *Federation of Labor* v. *McAdory,* 325 U. S. 450
(1945).  Moreover, it is even questionable whether
respondent has satisfied the jurisdictional amount require-
ment for such actions.  See *Travelers Ins. Co.* v. *Green-
field,* 154 F. 2d 950; *New York Life Ins. Co.* v. *Greenfield,*
154 F. 2d 953; *Commercial Casualty Ins. Co.* v. *Fowles,*
154 F. 2d 884; *Mutual Life Ins. Co.* v. *Moyle,* 116 F.
2d 434.  That the Declaratory Judgment Act in no way
affects the jurisdictional requirements for federal courts
is clear.  "To sanction suits for declaratory relief as
within the jurisdiction of the District Courts merely
because . . . artful pleading anticipates a defense based
on federal law would contravene the whole trend of juris-
dictional legislation by Congress, disregard the effective
functioning of the federal judicial system and distort the
limited procedural purpose of the Declaratory Judgment
Act." *Skelly Oil Co.* v. *Phillips Petroleum Co., supra,* at
673–674.

---

[3] The argument that the suit here is not really one to set aside the
Board award (because the moment it was filed that award was voided
and the suit is, in reality, a new proceeding in which the workman
must establish liability), when coupled with the result here, leads to
the total abandonment of the rule of *St. Paul Indemnity Co.* v. *Red
Cab Co.,* 303 U. S. 283 (1938).  It would permit jurisdiction to be
established by the plaintiff's allegation that at some prior time the
defendant had claimed, even if only extrajudicially, an amount equal
to the jurisdictional minimum.

Finally, today's decision effectively emasculates the recent congressional attempt to limit diversity jurisdiction, especially in workmen's compensation cases. In order to decrease "the workload of the Federal courts," which "has greatly increased because of the removal of workmen's compensation cases from the State courts to the Federal courts," the Judicial Conference of the United States urged the passage of the current legislation. S. Rep. No. 1830, 85th Cong., 2d Sess. 7. Workmen's compensation cases were singled out and specifically dealt with because they "arise and exist only by virtue of State laws. No Federal question is involved and no law of the United States is involved in these cases." *Id.*, at 8. To accomplish the desired result of restricting federal diversity jurisdiction, Congress raised the minimum jurisdictional amount from $3,000 to $10,000. Corporations were deemed citizens of more than one State and removal of workmen's compensation cases to federal courts was forbidden.

To further limit the number of diversity cases, the Congress enacted 28 U. S. C. § 1332 (b), which provides that

> "where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, *computed without regard to any . . . counterclaim to which the defendant may be adjudged to be entitled,* . . . the district court . . . may impose costs on the plaintiff." (Emphasis added.)

This provision makes little sense when applied to the result now approved by the Court. If respondent were to obtain the relief it sought, namely, to have the Board's award of less than $10,000 "vacated, set aside, voided and declared to be of no further force and effect," it is clear that costs could be assessed against it under § 1332 (b). This produces an anomalous situation which the Court

must implicitly approve. Respondent has no hope of avoiding possible liability under the cost sanction of § 1332 (b). This is so because the relief it obtains must be measured against the jurisdictional minimum "without regard" for Horton's possible counterclaim. We are therefore left with the strange result that while respondent has met the requirements of § 1332 (a), yet under § 1332 (b) it will be liable for costs for failing to meet the same requirements.

Moreover, the Senate Report expressed concern for the problems of the injured employee in federal court,

> "[S]ome of these State [workmen's compensation] statutes limit the venue to the place where the accident occurred or to the district of the workman's residence. When removed to the Federal court the venue provisions of the State statute cannot be applied. Very often cases removed to the Federal courts require the workman to travel long distances and to bring his witnesses at great expense. This places an undue burden upon the workman and very often the workman settles his claim because he cannot afford the luxury of a trial in Federal court." S. Rep. No. 1830, 85th Cong., 2d Sess. 9.

While 28 U. S. C. § 1332 does not specifically prohibit the filing of original workmen's compensation cases, a clearer expression of congressional dislike for saddling federal courts with such cases could hardly be imagined. We should, therefore, give effect to this policy wherever possible. Not only does the decision today fail to do this, but the Court goes out of its way to defeat the congressional intent. The statement that "the workman has the option to file his case in either the Federal or the State court," S. Rep. No. 1830, 85th Cong., 2d Sess. 9, is no longer correct. It is now an unequal race to the courthouse door—a race which the insurers will invariably win,

since they have resident counsel in Austin (the location of the Texas Industrial Accident Board) who quickly secure news of Board awards and are thus enabled to "beat" the workman in the choice of forums. Thus, the Court—contrary to the specifically expressed intention of the Congress—grants the insurance companies the option of going into federal court, with all its attendant difficulties to the already overburdened federal judiciary and the impecunious workman. We thought differently in 1957, when we refused to "read legislation with a jaundiced eye," saying that "it will not do for us to tell the Congress 'We see what you were driving at but you did not use choice words to describe your purpose.' " *United States* v. *Union Pacific R. Co.*, 353 U. S. 112, 118. Congress closed the back door and locked it tight in 1958, only to have the Court break down the front door today and hang out the welcome sign.