**ADAMAR OF NEW JERSEY,
INC., Plaintiff,**

v.

**Sheldon KARABELL, M.D., Defendant.**

Civ. A. No. 89–2582.

United States District Court,
D. New Jersey.

Sept. 21, 1989.

Phillip S. Van Embden, P.C., Millville, N.J., for plaintiff.

Dolchin, Slotkin & Todd, Haddonfield, N.J. by Dennis L. Scanlon, Andrea Smith, for defendant.

## OPINION

COHEN, Senior District Judge:

Defendant, Sheldon Karabell, M.D. ("Dr. Karabell"), a resident of Huntington Valley, Pennsylvania, moves to transfer this action to the United States District Court for the Eastern District of Pennsylvania

pursuant to 28 U.S.C. § 1404(a). This action originated in the Superior Court of New Jersey, Atlantic County, and was removed by defendant to this Court pursuant to 28 U.S.C. § 1441. Plaintiff, Adamar of New Jersey, Inc., ("Adamar"), sole owner and operator of the Tropworld Casino and Entertainment Resort in Atlantic City [1] responds by requesting a remand of the action to the New Jersey State Court on the ground of improvidently granted removal, pursuant to 28 U.S.C. § 1447(c). For the reasons that follow, we remand to the Superior Court of New Jersey, Atlantic County.

### I.  *Factual Background*

Dr. Sheldon Karabell is an allegedly compulsive gambler, a status he claims and confers upon himself, not something this Court has ascribed to him. Apparently in January of 1980, he instituted a relationship with Adamar at its New Jersey Casino which was then known as the Tropicana. At that time Adamar established a credit line at Dr. Karabell's request. On or about February 2, 1988 he went to Atlantic City, New Jersey to gamble at casinos. He engaged in this conduct until approximately August 14, 1988. Dr. Karabell alleges that he visited the plaintiff's casino on approximately six occasions between January 20, 1988 and July 12, 1988. Upon each visit, he requested and was extended monies, assumedly for the purpose of gambling, along with numerous complimentary services. The total estimate advanced over the relevant period was $210,000 of which Dr. Karabell claims to have lost $132,000. However, he has only failed to pay $43,000 worth of outstanding markers for which plaintiff originally filed suit to recover in the State Superior Court. It is also alleged that Dr. Karabell received $8,772.00 worth of complimentary benefits including hotel rooms, food, beverages and transportation. Finally, he alleges that casino employees watched him lose the $43,000 at issue in approximately two hours on July 12, 1988.

---

1. The Tropworld was formerly known as the Tropicana Hotel and Casino and Adamar of New Jersey, Inc. is owned by the Ramada Corporation.

## II. *Procedural History*

On or about March 24, 1989 Dr. Karabell filed suit in the United States District Court for the Eastern District of Pennsylvania against Tropworld Casino and Entertainment Resort, (the wholly owned subsidiary of Adamar of New Jersey, Inc.), as well as Caesar's on the Boardwalk owned by the Boardwalk Regency Corporation, Trump Plaza Hotel and Casino and Trump Castle Hotel and Casino. That action was assigned to the Honorable James McGinn Kelly as Civil Action No. 89-2885.[2] The Karabell complaint contains four counts; unenforceable loan, rescission of loan, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Prior thereto the plaintiff filed a complaint against Dr. Karabell in the Superior Court of New Jersey, Atlantic County, Law Division on January 9, 1989, Docket No. ATL-L-000089-89, containing one count for breach of contractual agreement to pay a legally enforceable obligation. A civil summons was prepared on January 11, 1989 and service was attempted by certified mail, return receipt requested as well as by regular mail on April 21, 1989 pursuant to N.J.R. 4:4-4(e) (1988). On April 21, 1989 someone at Dr. Karabell's residence received the certified mail, signed the attached receipt, took possession of the mail, but then obliterated the signature on the return receipt and refused acceptance of the certified envelope. Service was again attempted by the postal authorities on April 26, 1989, but again the mail was rejected and returned to plaintiff's counsel clearly marked refused.

The question raised by plaintiff's motion to remand is whether the certified mail delivery constituted service under the New Jersey Rules, specifically Rule 4:4. Rule 4:4-4(e) allows substituted service by:

mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to the individual addressed to his dwelling house or usual place of abode or, with postal instruc-

tions to deliver to addressee only, to his place of business or employment. If the addressee refuses to claim or to accept delivery of registered or certified mail, service may be made by ordinary mail addressed to him at his dwelling house or usual place of abode. *The party making service may, at his option, make service simultaneously by registered or certified mail and ordinary mail, and if the addressee refuses to claim and accept delivery of registered mail and if the ordinary mailing is not returned, the simultaneous mailing shall constitute effective service.*

N.J.R. 4:4-4(e) (1988) (emphasis supplied). This provision has been held constitutional by the New Jersey Courts. *See, e.g., Sears, Roebuck & Co. v. Katzmann,* 137 N.J.Super. 106, 107-08, 348 A.2d 193 (App. Div.1975). The only requirement that is placed on this method of service is that it must be consistent with due process. *See, e.g., Audel Corp. v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207 (1971). Such long arm statutes have been determined by the Supreme Court not to violate due process. *See, e.g., International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Thus, even though Dr. Karabell, or someone at his residence, returned the registered mail package, arguably under R. 4:4-4(e), the simultaneous regular mail package that plaintiff's counsel certifies he mailed and which has not been returned, constituted effective service on April 21, 1989. It is not clear, however, under New Jersey law, whether the service by regular mail when registered mail is refused is effected on the date the registered mail is refused or when the regular mail is *actually received;* however, the implication and, we believe, the approach that will be adopted by the Supreme Court is that the date registered mail is refused is applied.

If service of the certified mail was effected on April 21, 1989, then Dr. Karabell's petition for removal is defective because 28

---

**2.** We note in passing that as much as these cases should most likely all be tried together, we are without jurisdiction to consolidate the case be-

fore Judge Kelly into this action. *See, e.g., Facen v. Royal Rotterdam Lloyd S.S. Co.,* 12 F.R.D. 443 (S.D.N.Y.1952).

U.S.C. § 1446(b) requires the petition to be filed within 30 days of receipt of service of process and said petition was not filed until June 7, 1989, 44 days after receipt. If, however, we accept defendant Dr. Karabell's unsworn statement (made in the body of his Notice of Removal)) that service was not effective until the complaint was actually received on or about May 20, 1989, then his removal was not defective. June 7, 1989 would then be an appropriate date for removal because it is within 30 days of May 20, 1989.

This analysis, is however, for the most part academic and we therefore need not resolve it, since, although the parties do not raise this point, the jurisdictional amount necessary for removal is clearly lacking on the face of the plaintiff's complaint and we therefor lack subject matter jurisdiction. The removal occurred on June 7, 1989 pursuant to 28 U.S.C. § 1446(b) with jurisdiction being based in this court on diversity. On July 3, 1989 plaintiff filed a motion to remand within the 30 day requirement of 28 U.S.C. § 1447(c). Therefore, under 28 U.S.C. §§ 1441 and 1446, we look to the requirement for diversity jurisdiction, found in 28 U.S.C. § 1332, *at the time of the removal.* Under 28 U.S.C. § 1332, there are two requirements for diversity jurisdiction to exist; first, that each of the plaintiffs is a citizen of a state different from each of the defendants; and, second, the amount in controversy *exceeds* $50,000 on or after May 18, 1989. The Amendment to 28 U.S.C. § 1332 which increased the requirement from in excess of $10,000 to in excess of $50,000 specifically states that the in excess of $50,000 requirement applies to actions "removed to the United States District Courts on or after the 180th day after Nov. 19, 1988 ..." Pub.L. 100–702 (1988).[3] It has long been established that the amount in controversy is determined by looking to the face of the well-pleaded complaint, taking the plaintiff's view of amount requested as controlling. *See, e.g., St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Horton v. Liberty Mutual Insurance Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.' ") Plaintiff's well pleaded complaint seeks damages of $43,000 which obviously does not exceed the $50,000 jurisdictional requirement and we therefore *must* remand to the state court for lack of subject matter jurisdiction. An appropriate order follows.

### ORDER

This matter having come before the Court on a motion by plaintiff, Adamar of New Jersey, Inc., to remand this action to the Superior Court of New Jersey, Atlantic County on the ground that this Court lacks

---

**3.** We note and reject defendant's argument that there was some purpose intended by Congress to be found in the disparate language in the legislative history of Public Law 100–702. Defendant suggests that the omission of the phrase "commenced in or removed to" from section 201(b) and the inclusion of said language in sections 202 and 203 means that "[t]he Legislature did not intend that the new amount in controversy be used as a bar against removing actions from the state court to the district court." Mem. of Law in Opp. to Boardwalk Regency's Motion to Dismiss, submitted in *Boardwalk Regency Corp. v. Karabell,* Civ. No. 89–2574, a sister case to the one presently before us. We wholeheartedly disagree, finding it a spurious distinction at best, and one without meaning. There is no support in Congress' omission for the principle Karabell asserts because the procedural sequence in which a case is removed makes it unnecessary for Congress to reiterate the expressed language in Section 201(b). For further clarity, we explain that when a case is remanded pursuant to 28 U.S.C. § 1441 *at that time,* the District Court must have original jurisdiction. Since Congress indicated in the history to the change in 28 U.S.C. § 1332 that any action commenced on or after May 18, 1989 would be required to meet the $50,000 requirement, and case removed after that date without such an amount in controversy would not afford the District Court jurisdiction because it is not a case over which the District Court would have original jurisdiction. Thus, the District Court must first possess original jurisdiction over the case before it can be removed, and no original jurisdiction exists if the jurisdictional amount has not been satisfied. To that end, the Legislative history is therefore inapposite and unhelpful.

subject matter jurisdiction pursuant to 28 U.S.C. § 1447; and

It appearing that this Court lacks subject matter jurisdiction because there is a failure to meet the amount in controversy requirement of 28 U.S.C. § 1332; and

For the reasons set forth in the Court's opinion filed this day; and

For good cause shown;

It is on this 21st day of September, 1989 ORDERED that said motion be and the same is hereby GRANTED.