ULSTER SCIENTIFIC, INC., Plaintiff,

v.

GUEST ELCHROM SCIENTIFIC AG, Defendant.

No. 01–CV–690.

United States District Court, N.D. New York.

Nov. 9, 2001.

97

Law Offices of Richard J. Olivieri, New York City, Richard D. Malmed, Philadelphia, Pennsylvania, for plaintiff.

Law Offices of Stephen M. Hamik, New York City, for defendant.

## MEMORANDUM—DECISION AND ORDER

MORDUE, District Judge.

## BACKGROUND

Plaintiff, a New York corporation, brings this diversity action, filed December 28, 2000, to recover from defendant, a Swiss corporation, $115,800.32, plus interest and costs. Defendant moves to dismiss the action on grounds of lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a cause of action. Fed.R.Civ.P. 12(b)(1), (2) and (6). Defendant also moves to disqualify plaintiff's counsel, Richard D. Malmed, Esq. For reasons stated below, the Court denies dismissal and grants disqualification of counsel.[1]

---

1. Plaintiff's motion to assess against defendant the costs of service of process under Fed.R.Civ.P. 4(d), discussed in the briefs, was decided by United States Magistrate Judge Gustave J. DiBianco.

## FACTS

For more than twenty years prior to March 4, 1996, plaintiff was the exclusive United States distributor of defendant's medical products, which defendant shipped from Switzerland to plaintiff in New York. Plaintiff states that at some point, without plaintiff's consent, defendant began adding 10.5% annual interest to its invoices to plaintiff. Plaintiff avers that as of March 4, 1996, it owed defendant $476,968. According to defendant, the amount owed was $530,000.

On March 4, 1996, plaintiff, defendant and Lukens Medical Corporation ("Lukens"), a New Mexico corporation,[2] entered into an agreement (the "Guest agreement")[3] whereby defendant agreed to terminate its exclusive distributorship arrangement with plaintiff and enter into an exclusive distributorship agreement with Lukens. Lukens agreed to assume plaintiff's debt to defendant in the sum of $250,000 and to pay this amount directly to defendant, in partial discharge of that debt. Lukens further agreed to pay directly to defendant for eight years the sum of $7,500 per month out of payments, known as "post-closing payments" otherwise payable to plaintiff under a separate related agreement, described below, between plaintiff and Lukens. The Guest agreement provided that "the amount of each monthly Post–Closing Payment in excess of . . . $7,500, if any, shall be paid to

[plaintiff] . . . ." Correspondingly, plaintiff assigned to defendant plaintiff's right to receive $7,500 per month from the post-closing payments.

On March 5, 1996, plaintiff and Lukens entered into a related contract (the "Lukens/Ulster agreement") whereby plaintiff sold to Lukens some of plaintiff's assets, including its right to distribute defendant's products. Lukens agreed to make payments, called "post-closing payments," to plaintiff and Peter F. Lordi, Jr., plaintiff's president. It appears that the amount of the payments was based on the amount of income from the product lines Lukens purchased from plaintiff.[4]

The complaint claims that defendant received payments from Lukens under the Guest agreement until plaintiff's total debt to defendant was repaid, after which defendant continued to collect monies from Lukens by wrongfully demanding that Lukens pay accrued interest at the rate of 10.5% as well as an amount reflecting the currency differential between Swiss francs and American dollars. According to the complaint, "[p]laintiff never agreed to the payment of interest on the unpaid balance, and never agreed to pay for any adjustment for currency differentials between the Swiss franc and the American dollar on the existing debt." Plaintiff claims that by this means defendant wrongfully collected from Lukens $90,115.32 in accrued interest

2. Sometime thereafter, Lukens was acquired by the California-based Futura Medical Corporation.

3. The Guest agreement is attached to and incorporated by reference into the complaint.

4. The Lukens/Ulster agreement has not been provided to the Court, but its general purport can be inferred from the Guest agreement and the complaint in a separate action brought by plaintiff against Lukens alleging Lukens' breach of the Lukens/Ulster agreement. *Ulster Scientific, Inc. and Peter F. Lor-*

*di, Jr. v. Lukens Medical Corp.*, Index # 98–2611 (Supreme Court, Ulster County). That action has since been settled pursuant to the Settlement Agreement between Ulster Scientific, Inc., Peter F. Lordi, Jr., and Futura Medical Corp., f/k/a Lukens Medical Corp., dated October 10, 2000, and submitted to the Court in connection with this motion. Based on the confidentiality provisions of that agreement and the correspondence in the file, the Court directs that the Settlement Agreement be sealed.

and $25,685 in currency adjustments, for a total of $115,800.32. It appears to be plaintiff's position that Lukens should instead have paid these sums to plaintiff under the Lukens/Ulster agreement.

## DISCUSSION

### I. Subject matter jurisdiction

Plaintiff asserts that this court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2), which provides for district court jurisdiction in cases where the parties are diverse and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" Defendant, asserting that plaintiff's claims do not attain the monetary minimum, moves to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

■ "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). In addressing the question of good faith, courts have held that dismissal is justified only where it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *See id.; St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Thus, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount," the suit will be dismissed. *St. Paul*, 303 U.S. at 289, 58 S.Ct. 586; *accord Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). That a plaintiff might not ultimately recover the minimum jurisdictional amount or that a valid defense to the claim may exist, does not show plaintiff's bad faith or destroy jurisdiction. *See St. Paul*, 303 U.S. at 289, 58 S.Ct. 586.

■ Here, the alleged jurisdictional defect does not appear on the face of the complaint, which sets forth a claim for money damages and a basis for calculating those damages in the amount of $115,800.32. At this point there is no ground for a finding that this amount is not sought in good faith, nor does it appear to a legal certainty that plaintiff's claim is really for less than the jurisdictional amount. Dismissal on this ground is denied.

### II. Failure to state a claim

In addressing a motion to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all material facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *See McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir.1997). Dismissal is proper only where it appears beyond doubt that plaintiff can prove no set of facts in support of its claims which would entitle it to relief. *See Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994).

■ The Court reads plaintiff's complaint as alleging that defendant received from Lukens money belonging to plaintiff and that in equity and good conscience defendant should be compelled to return it. If plaintiff is able to prove this claim at trial, plaintiff may be entitled to recover the amounts wrongfully received by defendant. *See generally Matter of Estate of Witbeck*, 245 A.D.2d 848, 666 N.Y.S.2d 315, 317 (3d Dep't 1997). The effect, if any, of the settlement agreement in plaintiff's Ulster County action against Lukens (see n. 4, *supra*) cannot be determined at this point. Nor does the record establish

whether, under the terms of that settlement agreement, a recovery herein by plaintiff would amount to a double recovery.

Accepting as true all material facts alleged in plaintiff's complaint and drawing all reasonable inferences in its favor, the Court concludes that defendant has not demonstrated its entitlement to dismissal under Fed.R.Civ.P. 12(b)(6). Dismissal on this ground is denied.

### III. Personal jurisdiction

■ Defendant argues that the Court lacks personal jurisdiction over defendant. Fed.R.Civ.P. 12(b)(2). Since there has been no discovery and no evidentiary hearing on jurisdiction, plaintiff need make only a *prima facie* showing that jurisdiction is proper. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196–97 (2d Cir.1990).

■ New York law governs the issue of personal jurisdiction in this diversity action. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). Plaintiff relies on New York's long-arm statute,[5] which permits a court to exercise personal jurisdiction over any non-domiciliary who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y.C.P.L.R. 302(a)(1). Such jurisdiction extends only to a "cause of action arising from any of the acts enumerated" in section 302, that is, there must be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

■ Determining whether an out-of-state defendant "transacts business" in New York under section 302(a)(1) in the context of a contract action requires consideration of the totality of the circumstances. *See PaineWebber Inc. v. Westgate Group, Inc.*, 748 F.Supp. 115, 118 (S.D.N.Y.1990); *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Courts consider a variety of factors, including whether the defendant has an ongoing contractual relationship with a New York business; whether the contract was negotiated or executed in New York; whether, after executing such a contract, the defendant visited New York to meet with parties to the contract regarding performance thereof; and whether the contract requires the defendant to send notices and payments into New York or otherwise to perform in New York. *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996); *see generally Longines–Wittnauer*, 15 N.Y.2d at 456, 261 N.Y.S.2d 8, 209 N.E.2d 68. The place where the risk of loss shifts from a seller to a purchaser is not determinative, *see Anderson Dev. Corp. v. Isoreg Corp.*, 154 A.D.2d 859, 546 N.Y.S.2d 720, 721 (3d Dep't 1989), nor is the place of execution of the contract. *See*

---

5. Although he cites it, it does not appear that plaintiff relies on N.Y.C.P.L.R. 301, which permits a court to exercise jurisdiction over a foreign entity on any cause of action if defendant is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of defendant's 'presence' in this jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990). This standard requires that a defendant be present in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* It is not necessary to determine whether the plaintiff's performance of the distributorship arrangement amounted to doing business in New York under section 301, because that arrangement terminated in 1996, long prior to the commencement of this action.

*generally Longines–Wittnauer*, 15 N.Y.2d at 456, 261 N.Y.S.2d 8, 209 N.E.2d 68.

 The provision of 302(a)(1) allowing long-arm jurisdiction over a defendant who has "contract[ed] anywhere to supply goods or services in the state[,]" was added in 1979 to extend New York jurisdiction to the limits of due process; thus, it should be broadly construed. *See Island Wholesale Wood Supplies, Inc. v. Blanchard Inds., Inc.*, 101 A.D.2d 878, 476 N.Y.S.2d 192, 195 (2d Dep't 1984). In applying this provision, courts consider whether the purchase orders and other documents provide for shipment to New York, whether the defendant collected New York sales tax in connection with the transaction, whether the defendant solicited the contract in New York or entered New York for purposes of performing the contract, and any other factors showing that the defendant voluntarily and purposely availed itself of the privilege of transacting business in New York State. *See, e.g., Anderson*, 546 N.Y.S.2d at 721; *Alan Lupton Assocs., Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 482 N.Y.S.2d 647, 650–51 (4th Dep't 1984).

### Facts

According to the affidavit of Leo Weiss, a Swiss attorney and defendant's director, defendant is a corporation organized and existing under the laws of Switzerland. It has its domicile and principal offices in Switzerland and has never had any office, subsidiary or affiliated companies, employees, telephone listings, or other indicia of permanent or continuous presence in New York. It maintains its principal place of business in Cham, Switzerland, and maintains an office in Florida. All sales of goods from defendant to plaintiff throughout the time of their distributorship arrangement were "ex works Cham, Switzerland"; thus, possession and title to the goods passed to plaintiff in Switzerland.

Adrian H. Teuscher, a director of defendant, states in an affidavit that his meetings with representatives of Lukens in early 1996 to negotiate the distributorship agreement between Guest and Lukens took place in Florida. He further states that neither he nor anyone from defendant was present in New York at the closing of the Guest agreement on March 4, 1996, and that defendant executed the Guest agreement in Switzerland.

In his opposing affidavit, Peter F. Lordi, Jr., plaintiff's president, states that while the distributorship agreement was in effect, he met "numerous times" in New York with representatives of defendant to discuss distribution of defendant's products. Defendant's products were shipped from Switzerland to New York and housed in New York. With respect to the Guest contract and related agreements, Lordi states that during late 1995 and early 1996, Teuscher "participated extensively in the negotiations for the sale of Ulster's product lines, including the Guest products, with representatives of Lukens, and met Lukens' representatives in New York for that purpose[,]" and for the purpose of establishing the terms of the new distributorship arrangement to be entered into between defendant and Lukens.

Plaintiff served the summons and complaint herein by personal delivery to Teuscher at his residence in Lake Park, Florida, on April 17, 2001. According to Teuscher's affidavit, at the time of service he held the position at defendant of "director," which under Swiss law meant that he had "authority to act on behalf of the Company but only on matters undertaken in the ordinary course of business." On this motion defendant does not dispute whether Teuscher is an appropriate person

for service on the corporation under N.Y.C.P.L.R. 311(1).

### Discussion

■■■ On this limited record, the Court considers only whether plaintiff has made a *prima facie* showing of long-arm jurisdiction. Plaintiff's evidence is that for twenty years it was defendant's sole distributor in the United States; that all goods were shipped into New York and distributed from New York; that "numerous times" throughout this period representatives of defendant came into New York to meet with Lordi in connection with the distributorship agreement and, later, in connection with plaintiff's late payments; that Teuscher "participated extensively" on behalf of defendant in the negotiations for the Guest agreement; and that he met in New York with representatives of Lukens to negotiate the Guest agreement and to establish the terms of the new distributorship agreement. These factors are sufficient to constitute a *prima facie* showing that defendant transacted business and contracted to supply goods in New York within the meaning of section 302(a)(1).

Defendant contends, however, that the present dispute did not "aris[e] from" the distributorship arrangement, but rather only from the Guest agreement. Thus, defendant argues, in evaluating long-arm jurisdiction, the Court should properly consider only those New York contacts which pertain directly to the negotiation, execution and performance of the Guest agreement, and not those New York contacts which pertain to the parties' previous distributorship arrangement. Arguably, however, the Guest contract may be viewed as a modification or novation of the distributorship arrangement, such that the present dispute may be said to arise from the parties' long-term business relationship as reflected in both the distributorship arrangement and the Guest agreement. If this is so, the New York contacts pertaining to both agreements may properly be considered on the issue of long-arm jurisdiction herein. *See generally Davidson Pipe Supply Co., Inc. v. G.W. Sales, Inc.,* 685 F.Supp. 332, 334 (E.D.N.Y.1988).[6] The Court cannot resolve this issue on the present record. At this preliminary stage of the action, the Court must view the evidence most favorably to plaintiff; accordingly, it takes all New York contacts into consideration.

Accepting as true all of plaintiff's allegations, and viewing the evidence most favorably to plaintiff, the Court finds that plaintiff has made a *prima facie* showing of personal jurisdiction under 302(a)(1). It would serve no purpose to schedule an evidentiary hearing at this time, prior to discovery. Accordingly, the Court denies the motion to dismiss on the ground of lack of personal jurisdiction, without prejudice to renewal after discovery.[7]

---

**6.** In *Davidson Pipe Supply Co., Inc. v. G.W. Sales, Inc.,* 685 F.Supp. 332, 334 (E.D.N.Y. 1988), the complaint, which alleged that defendant had breached the parties' original contract and had procured an amendment of that contract through economic coercion and duress, sought rescission of the contract and restitution of all sums paid by plaintiff in excess of the original contract price. Although the amended contract was to be performed in Oklahoma, the court found that plaintiff had made a *prima facie* showing of jurisdiction under the "contracts anywhere to supply goods or services in the state" portion of section 302(a)(1), stating that "plaintiff's claims arise out of the original contract" and that "[t]he Complaint plainly seeks relief arising from the original contract, which provides for shipment of goods by defendant into New York."

**7.** The Second Circuit has stated:

In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It

## IV. Disqualification of counsel

█ Defendant moves for disqualification of Richard D. Malmed, Esq., plaintiff's counsel, based on Disciplinary Rules 5–108(A) and 5–102(A) of the New York Code of Professional Responsibility. Defendant first argues that, due to Malmed's undisputed representation of both plaintiff and defendant in the negotiation and drafting of the Guest agreement, his continued representation of plaintiff in this action constitutes representation of a party with materially adverse interests in a matter substantially related to the subject of his representation of defendant, in violation of Rule 5–108(A).

Defendant also relies on Rule 5–102(A), which prohibits a lawyer from representing a client if it appears that the lawyer ought to be called as a witness on a significant issue on behalf of the client. Defendant argues that "it would appear that central to the outcome of the action would be whether interest (and if so at what rate) was supposed to be paid by Lukens in assuming liability to pay Ulster's debt ..." and that Malmed's testimony would appear to be essential, inasmuch as he negotiated and drafted the agreement.

### Facts

As stated, it is undisputed that Malmed represented defendant in the negotiation, drafting and signing of the Guest contract. The record includes a bill submitted by Malmed to defendant for $9,492.60 for professional services connected with the Guest contract, listing at least twelve telephone contacts between Malmed and Teuscher.

In opposition to the motion, Lordi states in his affidavit that, during the negotiation of the Guest agreement:

... Mr. Teuscher, while fully aware that Richard D. Malmed was the attorney for Ulster in dealings with Lukens, nonetheless requested that Peter F. Lordi, Jr. permit Mr. Malmed [to] represent Guest in the negotiation of the new distributorship contract with Lukens since he was already familiar with the transaction. Mr. Lordi consented to this arrangement.

... Mr. Malmed's sole representation of Guest was the negotiation of a distributorship agreement with Lukens. At all times, Mr. Teuscher was aware that, in matters between Ulster and Guest, Mr. Malmed represented Ulster, alone.

Malmed also submits an affidavit, stating:

... Since I had already been involved in the negotiations between Ulster and Lukens, Mr. Teuscher asked me to represent Guest in the negotiations with Lukens for a new distributorship contract. With Mr. Lordi's permission, I agreed to do so, but advised Mr. Teuscher that, in matters between Guest and Ulster, I represented Ulster. Mr. Teuscher knew and understood ... the terms of this onetime arrangement and agreed to it.

... At various times, either Mr. Lordi or I had discussions concerning the re-

---

may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must es-

tablish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a *prima facie* showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.
*Marine Midland Bank N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) (citations omitted).

payment of the Guest debt with Mr. Teuscher. During those times, Mr. Teuscher advised me that he had consulted with a Florida attorney on those matters.

... At various times, Mr. Teuscher attempted to negotiate the terms of an interest rate to be applied to the existing debt Ulster owed to Guest. On each of those occasions, either Mr. Lordi, in my presence, or on a conference call with me, or I alone, refused to agree to pay interest on the debt. There was, to my knowledge, never any agreement to pay interest to Guest on the debt at issue.

... At no time to my knowledge during any of the negotiations was the issue of a currency fluctuation adjustment on the debt ever discussed between either Mr. Lordi or I and Mr. Teuscher.

The brief submitted by plaintiff in opposition to this motion states that the motion papers contain "no allegations of attorney-client communications which, in any way, touched upon the issues of interest rates on the Ulster debt." The brief continues: "Was there some communication between Mr. Teuscher and Mr. Malmed arising out of that transaction which could prejudice Guest? The fact is, there was none."

### Disciplinary Rule 5–108(A)

Rule 5–108(A), 22 NYCRR 1200.27, provides in part:

[A] lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:

1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

The undisputed facts establish that Malmed formerly represented defendant in the negotiation, drafting and signing of the Guest contract, that the present action concerns the terms of that contract, and that this action therefore concerns a matter substantially related to the former representation. Clearly, plaintiff's interests in the present action are materially adverse to those of defendant.

Malmed affirms that he received no relevant confidential information from defendant during that representation. In representing defendant, however, Malmed had access to defendant's expectations, statements and conduct regarding the payment of interest and currency adjustments, and thus had access to privileged information pertinent to the issue which is at the heart of this case. Therefore, the Court has no hesitation in exercising its discretion to disqualify Malmed from representing plaintiff in this matter under Rule 5–108(A). That there is no alternative to disqualification is obvious from Malmed's affidavit and brief, in which he repeatedly attempts to benefit his present client by making representations about his communications with Teuscher during the negotiation and drafting of the Guest agreement.[8]

---

**8.** As stated in *Ullrich v. Hearst Corp.*, relied on by defendant:

The rule is not designed merely to prevent the disclosure of confidences by the lawyer. It concerns itself as much with the lawyer's use of confidential information in a manner adverse to the interests of the former client that trusted the lawyer with its confidences. Adverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses. The rule concerns itself with the unfair advantage that a lawyer can take of his former client in using

### *Disciplinary Rule 5–102(A)*

██ Rule 5–102(A), 22 NYCRR 1200.21, provides:

> A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, except that the lawyer may act as an advocate and also testify:
>
> \* \* \* \* \* \*
>
> 4. As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case.

Inasmuch as it appears from the face of the complaint that this case turns on construction of the Guest agreement and the intent of the parties thereto relative to interest and currency adjustments, it is virtually inevitable that Malmed will be called to testify,[9] thus requiring his disqualification under Rule 5–102(A). *See generally Grossman v. Commercial Capital Corp.*, 59 A.D.2d 850, 399 N.Y.S.2d 16, 17 (1st Dep't 1977). Plaintiff has not demonstrated that Malmed's disqualification would subject him to "substantial hardship ... because of the distinctive value of the lawyer as counsel in the particular case." Rule 5–102(A)(4). Plaintiff states that Malmed has represented it since 1994 and possesses detailed knowledge of plaintiff's business situation and history; however, this case is not complex and could be handled by any competent lawyer practicing in the field of commercial contracts. *See id.* Nor does plaintiff's claim of financial difficulties demonstrate substantial hardship within the meaning of the exception. *See id.* No other exceptions to Rule 5–102(A) apply here. Accordingly, Malmed is disqualified from representing plaintiff under this rule as well.

### CONCLUSION

Accordingly, it is

ORDERED that the copy of the Settlement Agreement between Ulster Scientific, Inc., Peter F. Lordi, Jr., and Futura Medical Corp., f/k/a/ Lukens Medical Corp., dated October 10, 2000, and submitted to the Court in connection with this motion, be sealed; and it is further

ORDERED that so much of defendant's motion as seeks to disqualify Richard D. Malmed, Esq., from representation of plaintiff in this action is granted; and it is further

ORDERED that so much of defendant's motion as seeks dismissal on the ground of lack of personal jurisdiction under N.Y.C.P.L.R. 302(a)(1) is denied without prejudice to renewal after discovery; and it is further

ORDERED that defendant's motion is otherwise denied in its entirety.

IT IS SO ORDERED.

---

adversely to that client information communicated in confidence in the course of the representation. It concerns itself also with the importance of protecting the confidential relationship between client and attorney; if clients withheld information from their lawyers out of fear that the lawyers might use the information against the client in a subsequent adverse representation, the ability of the legal profession to render valuable advice to its clients would suffer. 809 F.Supp. 229, 236 (S.D.N.Y.1992) (citations omitted).

9. Indeed, the record contains a draft of the Guest agreement, apparently sent by Malmed to plaintiff, defendant and Lukens, which contains an express provision for interest at 1% per month.