IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-41588
_____

ANTHONY VOLENTINE; HARRY C. ANDERSON;
JASON W. APODACA; ARTHUR M. ARNOLD, JR.;
JOE E. ASHCRAFT; ET AL.,

                                      Plaintiffs-Appellants,

versus

BECHTEL, INC.; MOBIL CHEMICAL CO.,

                                      Defendants-Appellees.
_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:98-CV-1609)
_____
February 9, 2000

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

     The 308 plaintiffs, construction workers and union members,
were fired by C. A. Turner Contractors, their employer--allegedly
because of pressure from the defendants Bechtel, the general
contractor, and Mobil, the owner--when they took unauthorized,
organized breaks specifically forbidden by orders of Bechtel.
After losing their unfair labor practice charges before the
National Labor Relations Board, the plaintiffs have now sued the
defendants based on state law claims of tortious interference with
contract, conspiracy to interfere with contract, and intentional

---

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

infliction of emotional distress.  The district court dismissed the complaint on summary judgment, holding that the plaintiffs' claims were preempted under § 8 of the National Labor Relations Act.  For the reasons that follow, we affirm.

I

In August 1996, Mobil began its Olefins Expansion Project in Beaumont, Texas.  Mobil had hired Bechtel, Inc. as the general contractor, and Bechtel had hired Turner as a subcontractor for construction work.  On April 9, 1998, Bechtel's construction site manager for the project, Sam Stoddard, sent a letter to its subcontractors, informing them that the company would no longer allow organized mass breaks or organized break areas because of alleged abuse of those breaks.  Bechtel continued to allow for non-mass breaks necessary for worker safety, though Bechtel explained that the subcontractors would have to pay for that break time themselves.

On April 13, almost all of Turner's employees decided to disregard the order and continued their practice of taking mass breaks.  Turner fired the employees taking the breaks that day. The plaintiff employees, however, did not surrender.

On April 14, Pipe Fitters Local Union No. 195 filed an unfair labor practice charge against Bechtel, alleging violations of § 8(a)(1), (3), and (5) of the NLRA by "eliminat[ing] . . . established, organized work breaks" and discriminatorily terminating employees "because of their membership in and/or

2

activities on behalf of their collective bargaining representative." On April 20, the International Union of Operating Engineers, Local 450, and the Texas Laborers' District Council and Laborers' 80 each filed the same charges against Bechtel. The charges were later amended to assert identical allegations against Mobil. After investigating these charges, the National Labor Relations Board refused to issue a complaint against Bechtel or Mobil.

After the failure of their NLRA claims, the 308 individual plaintiffs filed suit in Texas state court for tortious interference with contract, conspiracy to interfere with contract, and intentional infliction of emotional distress. In their interference with contract claims, the plaintiffs charged that the defendants "willfully and intentionally set about to cause or force C. A. Turner Construction Company to terminate its contracts of employment with Plaintiffs."[1] The plaintiffs' intentional infliction claim merely asserted that this same tortious conduct had caused them to suffer emotional distress.

The defendants removed the case to federal district court and later moved for summary judgment. The court granted that motion on

---

[1]The plaintiffs also alleged that the "[d]efendants set about to accomplish their objective by making false and misleading accusations against the Plaintiffs and disparaging the reputations of the Plaintiffs." Because these alleged activities were part of the alleged scheme to obtain the firing, we will not treat them as separate from the central allegation that the defendants forced the firing.

3

the grounds that § 8 of the NLRA preempted the state law claims. The plaintiffs appeal.

## II

We must first determine whether federal jurisdiction is appropriate in this case. Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal de novo. Vasquez v. Alto Bonito Gravel Plant Corp., 56 F.3d 689, 692 (5th Cir. 1995)(quoting Leffall v. Dallas Ind. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994). We impose upon the removing [party] the burden of establishing the existence of subject matter jurisdiction. Id.

The district court allowed the defendants' removal motion based on federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, though either ground would have been sufficient to establish federal jurisdiction. We begin with diversity.

There are two requirements for establishing diversity jurisdiction: (1) diversity of citizenship and (2) an amount in controversy over $75,000. 28 U.S.C. § 1332. Here, the defendants admitted citizenship in Nevada, California, New York, and Virginia. The defendants then asserted "on information and belief" that all 308 plaintiffs were citizens of Texas. The plaintiffs have failed to demonstrate that this was incorrect. Because unrebutted allegations of citizenship in a removal petition based on information and belief is sufficient to satisfy the removal

4

statute, Jones v. Newton, 775 F.2d 1316, 1317-18 (5th Cir. 1985), the defendants have satisfied the first requirement for diversity jurisdiction.

With respect to the amount in controversy, damages are measured based on what is pled, not the relative likelihood of actually securing a particular award. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); National Union Fire Ins. Co. of Pittsburgh v. Russell, 972 F.2d 628, 630 (5th Cir. 1992). When the complaint does not allege a specific amount of damages, the removing party must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).[2] The court should first look to the complaint to determine whether it is "facially apparent" that the plaintiffs' claims are likely to exceed that amount. Id. At that point, jurisdiction is proper, unless the plaintiffs can establish that it is "legally certain" that the claim is for less than the jurisdictional amount. De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995).[3]

_____

[2]Although the defendants' removal motion listed the amount in controversy as $50,000, we treat that as an oversight based on an old version of 28 U.S.C. § 1332. Regardless, it is the complaint that is important for determining the amount in controversy, not the defendants' removal motion.

[3]The De Augilar panel speculated about how a plaintiff might do so:

Plaintiff's state complaint might cite, for example, to

5

It is apparent from the plaintiffs' Third Amended Complaint that they are suing individually rather than based on a single, common injury. For that reason, aggregation of actual damages among the various plaintiffs is not possible in order to meet the $75,000 requirement. Zahn v. International Paper Company, 414 U.S. 291, 294-95, 94 S.Ct. 505, 508-09, 38 L.Ed.2d 511 (1973). Each plaintiff's claim must satisfy that amount for us to have diversity jurisdiction over his or her claims. Id.

In this case, the plaintiffs did not allege a specific amount of damages. Instead, they asserted

> a loss of income both in the past and in the future, the total destruction of their relationship with their former employer, C. A. Turner Construction Company, and devastating damage to their precautions within the market of their chosen trade. Plaintiffs have all been seriously damaged in their ability to secure alternative employment, resulting not only in loss of income and lost earning capacity, but in serious emotional distress and mental anguish occasioned by the loss of personal esteem resulting from their lack of work or opportunity to continue to work.

If proven, it would be reasonable to conclude that these damages would meet the $75,000 threshold, especially given the severity

---

> a state law that prohibits recovery of damages that exceed those requested in the ad damnum clause and that prohibits the initial ad damnum to be increased by amendment. Absent such a statute, "[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints."

De Aguilar, 47 F.3d at 1412 (quoting In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992)(per curiam)).

alleged.[4]  The plaintiffs conceded as much in their Third Amended Petition: "This court has jurisdiction inasmuch as the amount in controversy exceeds the minimum jurisdictional limits of the Court."  Because the plaintiffs have made no attempt to establish that it is "legally certain" that the amount would be less, we believe that the plaintiffs' claims satisfy the $75,000 requirement, and that we therefore have diversity jurisdiction over these claims.

III

A

The plaintiffs next take issue with the district court's determination that § 8 of the NLRA[5] preempted their tortious

---

[4]We are only concerned with actual damages and do not reach the as yet unresolved question in this circuit of whether punitive damages under Texas law may be aggregated in order to establish diversity jurisdiction.  Compare Ard v. Transcontinental Gas Pipe Line Corp., 138 F.3d 596, 602 (5th Cir. 1998)(no aggregation under Louisiana law) with Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1332-35 (5th Cir. 1995)(aggregation under Mississippi law).

[5]Section 8(a) of the NLRA is codified at 29 U.S.C. § 158 and reads, in relevant part:

> It shall be an unfair labor practice for an employer--
>   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in § 157 of this title. . .
>   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . .
>   (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of § 159(a) of this title.

Section 7, codified at 29 U.S.C. § 157 and referred to in § 8,

7

interference with contract, conspiracy to interfere with contract, and intentional infliction of emotional distress claims under Texas law. Whether a claim is preempted is an issue of law that we review de novo. Windfield v. Groen Division, Dover Corp., 890 F.2d 764, 766 (5th Cir. 1989)(citing Vincent v. Trend Western Technical Corp, 828 F.2d 563, 569 (9th Cir. 1987).

B

In San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court enunciated a rule of preemption for state law based claims that touched on areas covered by federal regulation under the NLRA:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.

Garmon, however, provided for exceptions to this broad "arguably subject" test when the challenged conduct is a mere "peripheral concern" of federal labor law or touches "deeply rooted" local

---

reads:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in § 158(a)(3) of this title.

interests.  Id. at 243-44.  Subsequent cases have refined the Garmon preemption doctrine and these exceptions.  The most notable of these cases is Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 197-98, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), where the Court held:

> The critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . that which could have been . . . presented to the Labor Board.

This case, however, was somewhat ambiguous because the court did not suggest the analysis for determining when "controversies" might be considered "identical."

During the 1983 term, the Court analyzed two separate cases using the Sears framework that provide useful guidance.  In Local 926, International Union of Operating Engineers AFL-CIO v. Jones, 460 U.S. 669, 682, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), the Court looked to whether the controversies were the same "in a fundamental respect."  In that case, the plaintiff brought NLRB and state law claims charging that a union had coerced his employer to fire him because he was not a member of that union in good standing. Because both controversies centered on whether a discharge was due to union influence, the state law claims were preempted.  Id.  In Belknap, Inc. v. Hale, 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983), on the other hand, the Court focused not just on the central essence of the two claims, but instead examined similarities in the factual bases of each, the interests each

9

sought to protect, and the relief requested as part of each one. Id. at 510-11.[6]

Both of these cases have been important in Garmon preemption analysis in this circuit. See, e.g., Sheet Metal Workers Local Union No. 54, AFL-CIO v. E. F. Etie Sheet Metal Co., 1 F.3d 1464, 1470 (5th Cir. 1993)(relying on both standards); Hobbs v. Hawkins, 968 F.2d 471, 476 (5th Cir. 1992)(relying on the "fundamental respect" criterion); Windfield v. Groen Division, Dover Corp., 890 F.2d 764 (5th Cir. 1989)(discussing both standards).

C

With each of these precedents offering some guidance, we turn to consider the claims for tortious interference with contract and conspiracy to interfere with contract that are before us. Thus, in Jones, 460 U.S. 669, we note that the Supreme Court held that state claims for tortious interference with contract can be preempted under the Garmon doctrine. On the same basis, claims for conspiracy to interfere with contract may also be preempted. But

---

[6]In Belknap, the plaintiffs were replacement workers who sued their employer for misrepresentation and breach of contract, claiming that the defendant corporation had hired them as permanent employees but then fired them when it agreed to a contract with the striking union. The Court held that the claims were not preempted. NLRA claims arising from these facts would have raised only the rights of the strikers being infringed by the offer to the replacement workers. The state claim, on the other hand, was based on the rights of the replacement workers for damages irrespective of the rights of strikers. Moreover, reinstatement was not a remedy available under state law but was under federal law.

Jones does not stand for the proposition that either cause of action is always preempted.

We think that this case bears a close resemblance to Jones in that both the NLRB and state law claims are fundamentally the same. In the NLRB proceeding, the unions charged that Bechtel and Mobil had forced C.A. Turner to eliminate the breaks without consulting with the respective unions, and then to fire them for continuing to take those breaks. The plaintiffs made the same claim in state court--that the defendants forced C. A. Turner to fire them for taking en mass breaks. This issue is central to both claims and would be the focus of inquiry both before the NLRB and the court reviewing the state law claims.

Using the framework from Belknap buttresses the conclusion that the controversies are the same. Both controversies arise from the same set of facts--the defendants' alleged conduct in obtaining the firing of C.A. Turner's employees.[7] The interests in each action were the same--the right of the employees to keep their jobs after staging what amounted to an organized walkout. It is true that the remedies sought are somewhat different--back pay and other job-related losses, plus reinstatement in the NLRB action, and in

---

[7]The mere fact that the plaintiffs initially filed claims based on these same facts with the NLRB can be influential in finding preemption. That strongly suggests that the controversies are the same. See Parker v. Connors Steel Co., 855 F.2d 1510, 1517 (11th Cir. 1988)("By initially pursuing relief with the NLRB, the employees have implicitly recognized the Board's jurisdiction over their claims.")

the state law proceeding, damages, which would include economic losses plus non-economic-based damages. But that is frequently, if not always, the case in such preemption questions that involve administrative remedies as opposed to state court remedies. By itself, however, that is not enough to distinguish materially between the NLRB charges and the interference-with-contract claims. We thus conclude that the claims are essentially the same for purposes of federal preemption.[8]

---

[8]Another consideration determining whether this case falls within the ambit of the NLRA is the relationship between the defendants and plaintiffs. We believe that Bechtel, as a general contractor, and Mobil, as the ultimate employer, have a sufficient indicia of an employment relationship with the plaintiffs that their alleged conduct arguably falls under the NLRA. Given the nature of the work on the Mobil project, the plaintiffs' allegations as to the day-to-day influence that the defendants had over their work, the relationship between the plaintiffs as union members engaging in a partial strike activity to enforce a previous term of employment, and the defendants urging that they be fired for that activity, we conclude that their interaction arguably falls under the governance of the NLRA. We have previously acknowledged that a contractor may be liable to its subcontractors' employees for anti-union actions even though it was not the proximate employer. See Texas World Svc. Co. v. NLRB, 928 F.2d 1426 (5th Cir. 1991).

12

D

Just as with tortious interference claims, the NLRA may, based on the same rationale, preempt claims for intentional infliction of emotional distress. See Smith v. Houston Oilers, Inc., 87 F.3d 717, 721 (5th Cir. 1996). Courts have recognized, however, an exception to Garmon preemption when claims rest on extreme and outrageous conduct that is unrelated to an unfair labor practice:

> Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself

Farmer v. United Bd. of Carpenters, 430 U.S. 290, 305, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977)(footnote omitted). In Farmer, the plaintiff, a union member, alleged that the defendants, a union and union officials, had intentionally engaged in "'outrageous conduct, threats, intimidation, and words' which caused [the plaintiff] to suffer 'grievous mental and emotional distress as well as great physical damage.'" Id. The plaintiff attempted to prove that the union's campaign against him included "frequent public ridicule" and "incessant verbal abuse," although the opinion does not discuss exactly what he alleged occurred. The Court declined to preempt that state law claim. Instead, the Court held that the potential interference with federal concerns was minimal because the tort issue could be adjudicated without resolution of the underlying labor dispute. Id. What little potential interference there was

13

insufficient to counterbalance the legitimate and substantial state interest in protecting its citizens. Id.

In this case, the plaintiffs' Third Amended Complaint established the tortious interference claim as follows:

> The conduct referred to above [in the sections setting out the tortious-interference and conspiracy-to-interfere claims] engaged in by Defendants is outrageous and was intended to inflict emotional suffering and distress upon the Plaintiffs. The above alleged tortious conduct [related to interference with contract] on the part of the Defendants did in fact cause the Plaintiffs to suffer from emotional distress and mental anguish.

The intentional infliction of emotional distress claimed here is itself the actual firing, not the manner in which that firing occurred. There is a strong potential for interference with federal law for that reason. Thus, the Farmer exception does not apply, and the tortious interference claim is also preempted by federal law.

IV

We turn finally to the plaintiffs' contention that the existence of genuine issues of material fact should have prevented the district court from granting summary judgment on the issue of preemption. We can find no disputed factual issues, however, that should have prevented the district court from ruling on the defendants' summary judgment motion, nor have the plaintiffs pointed to any. Their one suggestion is that the "Defendants' motive for interfering with Appellants' employment contracts" was disputed. But that does not alter our preemption analysis.

14

Whatever the motive prompting the defendants to seek the firings, the plaintiffs' state law and NLRB claims arise out of the same facts and at their core are essentially the same. Because we have determined that the district court's legal determination with respect to preemption was proper, so was its summary judgment determination.

V

For the reasons stated herein, the district court's decision is

A F F I R M E D.