**BROTHERHOOD MUTUAL INSURANCE CO.**
Plaintiff

v.

**UNITED APOSTOLIC LIGHTHOUSE, INC., et al.** Defendants

No. CIV.A.00–496–KSF.

United States District Court,
E.D. Kentucky.

March 22, 2002.

Bernard D. Leachman, Jr., Louisville, KY, for Brotherhood Mut. Ins. Co.

Joey Dean Herndon, Richmond, KY, pro se.

Anthony Q. Potris, Richmond, KY, pro se.

### OPINION & ORDER

FORESTER, Chief Judge.

This matter is before the Court on plaintiff's motion for summary judgment [D.E.##5, 18] and defendants' motion to appear pro hac vice [D.E. # 19][1] and for an additional extension of time to file a responsive pleading [D.E. # 20]. The respective opposing parties have failed to respond to these motions and the time in which to do so has expired; therefore, these matters are ripe for review.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant United Apostolic Lighthouse, Inc. ("UAL" or "the church") is a church worship center located in Richmond, Kentucky. Defendant Joey Dean Herndon was an officer and trustee of the church and defendant Anthony Q. Portis was the church's pastor. According to the plaintiff, Brotherhood Mutual Insurance Co. ("Brotherhood"), the church also operated a separate daycare center, Lighthouse Child Care, Inc. ("the daycare center"). During Herndon's and Portis's tenure with the church, both defendants were actively involved in the management and day-to-day operations of the daycare center. Over time, allegations mounted that Herndon performed sexual acts on some of the children at the daycare center and Portis facilitated this activity, all in connection with the daycare center operation. The Commonwealth of Kentucky criminally charged Herndon and Portis respectively with sexual abuse and facilitating sexual abuse. The Commonwealth subsequently convicted Herndon of first degree sexual abuse, a Class D felony, and four misdemeanor counts of third degree criminal abuse. Portis was convicted of facilitating Herndon's sexual abuse of the children. Herndon and Portis have both appealed their convictions.

While the Commonwealth prosecuted Herndon and Portis for their sexually abusive acts, numerous parents, guardians, and "next friends" of the infant victims filed civil suits on their behalf against, *inter alia*, Herndon, Portis, the church, and the daycare center. Indeed, Brotherhood now identifies no less than eleven civil lawsuits filed in Madison Circuit Court against the defendants during 1999 and 2000. Brotherhood also states that the number of such lawsuits continues to multiply.[2]

---

1. The defendants have thus far proceeded *pro se*.

2. Plaintiff has not updated this Court regarding the precise procedural posture of any of the civil actions filed against Herndon, Portis, and the church in Madison Circuit Court. Moreover, this Court is left to assume that all subsequent lawsuits filed against these particular defendants were also filed in Madison Circuit Court.

In January of 1999, defendant UAL renewed its Commercial General Liability ("CGL") insurance policy with plaintiff, Brotherhood. The CGL policy included coverage for UAL's managing directors and appointed staff. In April of 1999, Herndon, Portis, and the church notified Brotherhood of the civil cases filed against them. According to the complaint in the case at bar, the defendants demanded and continue to demand that Brotherhood provide them with a defense in these state civil actions and pay any damages which may be adjudged against them.

As noted above, the church's CGL policy included coverage for the church's executive officers and directors, appointed staff, and employees. Therefore, Herndon and Portis were "insureds" within the meaning of the church's CGL policy for actions within the scope of their duties or employment. In addition, the church's CGL policy declaration page identified optional coverage for the church including, but not limited to, Sexual Acts liability coverage. Finally, with some limitations, both the CGL policy and the additional Sexual Acts liability coverage provide Brotherhood with the right and duty to defend suits seeking damages which may be covered under the CGL policy.

Based upon the policy provisions and the demands of Herndon, Portis and the church, Brotherhood has provided preliminary defense services in the state civil actions under a comprehensive reservation of rights. However, Brotherhood contends that the CGL policy issued to the church does not cover the daycare center or any of the actions allegedly taken by the individual defendants while operating the daycare center. Instead, Brotherhood argues that the daycare center was insured separately by Monroe Guarantee Insurance Co. of Indianapolis, Indiana and Colony Management Services, Inc. of Richmond, Virginia.[3]

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Brotherhood seeks relief from this Court in the form of a declaration "that it has no coverage, no liability for coverage, no duty to pay any Judgment, no duty to defend, and no duty to pay any costs, fees, or expenses for defense of Joey Dean Herndon, Anthony Q. Portis and [UAL]" arising from the underlying state lawsuits. Brotherhood also filed an alternative complaint for statutory and rule interpleader, naming Herndon, Portis and UAL as claimants to the $50,000 policy limit set forth in the church's Sexual Acts liability coverage. Shortly after filing the complaint, Brotherhood filed a motion for summary declaratory judgment.

## II. ANALYSIS

### A. Plaintiff's Declaratory Judgment Claim

As an initial matter, the Declaratory Judgment Act does not provide for its own subject matter jurisdiction; the plaintiff must establish that the district court has either diversity jurisdiction or federal question jurisdiction before the Court will entertain a declaratory action. In this case, plaintiff contends that the Court possesses diversity jurisdiction because the defendants are all Kentucky citizens, the plaintiff is an Indiana citizen and the Sexual Acts liability limit, in conjunction with the CGL defense coverage, establishes an amount in controversy exceeding $75,000.[4]

---

**3.** Neither insurance company is a party to this case.

**4.** "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a).

The amount in controversy as stated in the complaint controls for purposes of federal jurisdiction unless it appears to a legal certainty that the claim is for less than the jurisdictional amount. *See Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). The value of the object being litigated and the losses that would stem therefrom determine the amount in controversy in declaratory judgment actions. *See Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 346–47, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).. The Court is satisfied that diversity jurisdiction exists for the purpose of the declaratory judgment action.

Once the Court has determined that subject matter jurisdiction exists, it must evaluate whether this case is appropriate for declaratory judgment pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Under the Act, this Court may exercise jurisdiction over declaratory judgment suits, but is "under no compulsion to exercise that jurisdiction." *Id.* at 278, 115 S.Ct. 2137; *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In deciding whether to exercise its discretionary jurisdiction, this Court should determine:

> whether the judgment 'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984) (quoting E. Borchard,

Declaratory Judgments 299 (2d ed.1941)). In applying these tests, courts consider the following factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;'
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Aetna Casualty & Surety Co. v. Sunshine Corp.,* 74 F.3d 685, 687 (6th Cir.1996) (quoting *Grand Trunk,* 746 F.2d at 326). In addition to consideration of the five listed factors, the Court must make a full inquiry into all relevant considerations. *See Allstate Insurance Co. v. Green,* 825 F.2d 1061, 1065 (6th Cir.1987).

■ Here, as explained below, the factors clearly weigh against this Court exercising jurisdiction, particularly based upon considerations of "equity, comity & federalism." *Omaha Prop. & Cas. Ins. Co. v. Johnson,* 923 F.2d 446, 448 (6th Cir.1991) (citations omitted).[5] A declaratory judgment regarding liability coverage may not necessarily settle this controversy. If the Court determines that liability coverage exists, then the multitude of plaintiffs, who are not parties to this suit, would still be

---

5. This Court is aware that there is "no *per se* rule against a district court's entertaining a declaratory judgment action to determine an insurer's liability when a tort action is pending against its insured in a state court;" nevertheless, "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277–78 (6th Cir.1990).

left to battle with Brotherhood over equitable distribution of the funds. Of course the battle would rely primarily on the underlying facts in the state tort actions and, without the benefit of a trial or factual record, this Court would be ill equipped to make such distribution decisions.

More importantly, some of the underlying tort actions have been proceeding in Madison Circuit Court now for over two years. Obviously, the factual records pertaining to the numerous tort actions which have led to this insurance dispute are in state court, and not federal court. The plaintiff has presented no federal claims in the present action, the parties have not conducted any discovery, and the federal record is virtually devoid of facts about the underlying tort actions. Based upon the record before it, this Court cannot determine with any certainty whether claims arising from the defendants are covered by the policies issued to the church. The geographical and functional interrelatedness of the church and the daycare center is unclear. Many if not all of the plaintiffs in the underlying tort actions expressly named the church as a defendant. Save the bald assertions of Brotherhood—an interested party in the federal declaratory action—there is no evidence of how, when and where the alleged sexual misconduct took place. "These facts would necessarily be developed at a trial of the tort action[s], and may have a direct bearing on the determination of whether the insuring clause of the [CGL and Sexual Acts liability] policies, or the exclusions, control [Brotherhood's] obligations." *Allstate Ins. Co. v. Mercier,* 913 F.2d 273 (6th Cir.1990). While different legal issues are presented in the federal and state court actions, the actions are still parallel "in the sense that the ultimate legal determination in each depends upon the same facts." *Id.* at 279.

In addition, the state court forum provides a "better" and "more effective" fo-rum to address these state law issues since the underlying tort actions are proceeding there. As the Sixth Circuit explained in *American Home Assurance Co. v. Evans:*

We question the need for federal courts to issue declaratory judgments in [diversity] cases where a state court has already accepted jurisdiction over the subject matter of the lawsuit. We also question the need for such declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.

791 F.2d 61, 63 (6th Cir.1986). The plaintiff could have "presented the issues … brought to federal court in a separate action to the same court that will decide the underlying tort action." *Mercier,* 913 F.2d at 278. Moreover, "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* at 279. To outweigh this state interest, "more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing the federal court to rule first." *Johnson,* 923 F.2d at 448. Brotherhood failed to demonstrate that it is doing anything more than this.

It is true that a declaratory judgment might serve a useful purpose in clarifying the legal relations in issue. However, this clarification would come at the cost of "increasing friction between our federal and state courts and improperly encroaching upon state jurisdiction." *Mercier,* 913 F.2d at 278; *Johnson,* 923 F.2d at 448. As noted by the Supreme Court, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Ex-*

cess *Ins. Co. of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Accordingly, the Court will deny Brotherhood's motion for summary judgment and dismiss the declaratory action without prejudice to Brotherhood's right to file the same in Madison Circuit Court.

## B. Plaintiff's Alternative Interpleader Action

■ Brotherhood did not mention its alternative statutory and rule interpleader complaint in its motion for summary judgment. Nonetheless, the Court is obligated to raise those interpleader claims now because the Court lacks subject matter jurisdiction over the same. Federal courts are courts of limited jurisdiction, and possess only such power as is authorized to them by the Constitution and statutes. *See Willy v. Coastal Corp.,* 503 U.S. 131, 135–36, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). "Subject matter jurisdiction cannot be conferred on federal courts by consent of the parties. The existence of subject matter jurisdiction, moreover, is an issue that 'may be raised at any time, by any party or even *sua sponte* by the court itself.'" *Ford v. Hamilton Invests., Inc.,* 29 F.3d 255, 257 (6th Cir.1994) (citations omitted).

In its alternative complaint, Brotherhood states that:

> this Court has jurisdiction of this action for Interpleader by operation of 28 U.S.C. §§ 1335, ... 1397, 2361 [statutory interpleader] and Fed.R.Civ.P. 22 [rule interpleader], in that there is complete diversity of citizenship between the plaintiff and the defendants, and because plaintiff has in its custody or possession money of the value of $500.00 or more pertaining to the insurance policy at issue in this case.

*Complaint for Interpleader,* D.E. # 1 at 11–12. The central distinction between statutory interpleader and rule interpleader lies in their jurisdictional prerequisites.

*See Commercial Union Ins. Co. v. United States,* 999 F.2d 581, 584–85 (D.C.Cir. 1993). As the Court explains below, Brotherhood intertwined the two distinct standards in its alternative complaint, and on closer review, failed to satisfy the jurisdictional prerequisites under either form of interpleader.

### 1. Statutory Interpleader

28 U.S.C. § 1335(a) provides: "The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader [contesting a fund] of $500 or more ... if two or more adverse claimants [are] of diverse citizenship as defined in [28 U.S.C. § ] 1332[.]" In other words, subject to the standards listed above, statutory interpleader provides an independent grant of subject matter jurisdiction. Moreover, an interpleader action brought pursuant to § 1335 enjoys liberal procedural rules including relaxed venue, personal jurisdiction and service of process requirements as well as broad discretion to enjoin overlapping litigation. *See* 28 U.S.C. §§ 1397 & 2361. Statutory interpleader may be invoked by a stakeholder like Brotherhood with as little as $500 in controversy, and requires only "minimal diversity," that is, "diversity of citizenship between two or more claimants, without regard to the circumstances that other rival claimants may be co-citizens." *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Finally, the Court determines "minimal diversity" without regard to the citizenship of a stakeholder who deposits the disputed money or property into the Court's registry and is subsequently discharged from further liability by the Court. *See Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 72, 60 S.Ct. 44, 84 L.Ed. 85 (1939) ("Such deposit and discharge effectually demonstrates the applicant's disinterestedness as between the

claimants and as to the property in dispute").

As the Court noted above, Brotherhood filed two distinct complaints: a Complaint for Declaratory Judgment and alternatively, a Complaint for Interpleader. *See Complaint*, D.E. # 1. In the alternative complaint for interpleader, Brotherhood essentially states a claim for "strict" or "true" interpleader in which case the stakeholder disavows an interest in the stake. This is evidenced by the fact that the alternative interpleader complaint presupposes a condition precedent that this Court make a coverage determination adverse to the plaintiff. Of course any determination to this effect would remove Brotherhood from the real controversy between the adverse claimants. Then, and only then, does Brotherhood wish to pursue an interpleader action. In that situation, Brotherhood agrees to deposit the $50,000 Sexual Acts liability coverage with the Clerk of the Court and demands that this Court discharge Brotherhood from any further liability under the CGL policy. According to the rationale in *Treinies,* Brotherhood is a disinterested stakeholder and its citizenship is irrelevant for the purpose of establishing "minimal diversity." 308 U.S. at 72, 60 S.Ct. 44; *see also, Sun Life Assurance Co. v. Thomas,* 735 F.Supp. 730, 732 (W.D.Mich.1990); *compare American Family Mut. Ins. Co. v. Roche,* 830 F.Supp. 1241, 1248 (E.D.Wis. 1993) (holding that an arguably interested stakeholder was not a claimant with regard to the stake and its citizenship could not be considered to create minimal diversity) *with Lummis v. White,* 629 F.2d 397, 403 (5th Cir.1980), *rev'd on other grounds sub nom. Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) (holding that the citizenship of an interested stakeholder *may* be considered for purposes of establishing diversity under § 1335).

■ The adverse claimants in this action, defendants UAL, Joey Dean Herndon and Anthony Q. Portis, are all citizens of the Commonwealth of Kentucky. As one trial court within the Sixth Circuit explained:

The plaintiff, in seeking relief under 28 U.S.C. § 1335, ... fails to appreciate the evil at which statutory interpleader is directed. The Act was passed after much agitation to remedy the dilemma which faced a stakeholder when claimants were citizens of different states and thus not subject to the jurisdiction of a single state court or a single District Court. Thus the first requirement for statutory interpleader is that the claimants be of diverse citizenship. Since that requirement is lacking here (all potential claimants are citizens of Ohio), the plaintiff is not entitled to proceed under § 1335.

*National Casualty Co. v. Insurance Co. of North America,* 230 F.Supp. 617, 619 (N.D.Ohio 1964). The Court finds this reasoning persuasive. Because two or more adverse claimants are not of diverse citizenship, "minimal diversity" is lacking and the Court does not possess jurisdiction over Brotherhood's statutory interpleader claim. Thus, this interpleader action will lie, if at all, under Rule 22 of the Federal Rules of Civil Procedure.

### 2. Rule Interpleader

■ "Rule 22(1) provides a procedural framework for interpleader actions, but it does not confer subject matter jurisdiction on federal courts." *Metropolitan Life Insurance Co. v. Marsh,* 119 F.3d 415, 418 (6th Cir.1997) (citing Fed.R.Civ.P. 82). Under rule interpleader, the action must be based on a statutory grant of jurisdiction. *Id.* Stakeholders often bring rule interpleader actions under diversity jurisdiction and sometimes under federal question jurisdiction. *See* 28 U.S.C. §§ 1332,

1331. Brotherhood does not raise a federal question in its complaint for interpleader; therefore, jurisdiction exists if at all pursuant to diversity jurisdiction. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a).

■■■ Brotherhood mentions 28 U.S.C. § 1332 in its interpleader complaint and notes that there is complete diversity of citizenship between the stakeholder/plaintiff on one side and the claimants/defendants on the other side.[6] However, Brotherhood relies upon the $500 statutory interpleader amount in controversy to satisfy both the statutory and rule interpleader jurisdictional requirements. For rule interpleader actions based on diversity jurisdiction, the amount in controversy is determined by the value of the stake and it must exceed $75,000 exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Courts measure the stake by the stakeholder's allegation in the interpleader complaint and not by the amount claimed by the claimants. *See* 4 James Wm. Moore *et al.*, *Moore's Federal Practice* § 22.04[2][a]; *see generally*, *Horton*, 367 U.S. at 353, 81 S.Ct. 1570 (the amount

in controversy as stated in the complaint typically controls for purposes of federal jurisdiction). At two different points in the interpleader complaint, Brotherhood identified the "stake" as the Sexual Acts coverage which had a $50,000 policy limit. Because the amount in controversy does not exceed $75,000, this Court lacks subject matter jurisdiction over Brotherhood's rule interpleader action and must dismiss the same.

This dismissal allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court. The *res judicata* effect of this holding is consequently limited to the jurisdictional issues addressed above. The Kentucky Rules of Civil Procedure provide for a state interpleader action which is virtually identical to federal rule interpleader. *Compare* CR 22 *with* Fed.R.Civ.P. 22. To file such a claim, Brotherhood must satisfy CR 22 and the Kentucky jurisdictional requirements. The Madison Circuit Court—home to the underlying tort actions—"is a court of general jurisdiction; it has original jurisdiction of all justiciable causes not exclusively vested in some other court." KRS § 23A.010. Moreover, CR Form 13 provides a sample complaint alleging claims for both interpleader *and* declaratory relief.[7]

---

**6.** As discussed below, the Court finds the amount in controversy requirement lacking and therefore expresses no opinion as to the diversity of citizenship requirement.

**7.** In addition to the jurisdictional grounds discussed above, the Court notes that several circuits, despite proper subject matter jurisdiction, have refused to grant an interpleader remedy when the issues in the federal complaint could be resolved in state court proceedings. *See American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2nd Cir.1990); *Koehring Co. v. Hyde Construction Co.*, 424 F.2d 1200, 1204 (7th Cir.1970); *Home Indemnity Co. v. Moore*, 499 F.2d 1202, 1205 (8th Cir. 1974); *see also*, 4 James Wm. Moore *et al.*,

*Moore's Federal Practice* § 22.03[1][g]. The Second Circuit explained:

> it is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable.... Here we see no obstacle to determination of the [state claims] by way of a state court [interpleader] action [authorized by state law].

*Block*, 905 F.2d at 14. As the Court noted in its declaratory judgment discussion, the Madison Circuit Court currently is adjudicating the underlying tort actions and is better equipped factually and from a policy standpoint to handle the related interpleader claims.

## III. CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that:

(1) plaintiff's motion for summary judgment [D.E. ## 5, 18] is **DENIED**;

(2) defendants' motions for attorney Derek Farmer to appear *pro hac vice* [D.E. # 19] and for an extension of time to respond [D.E. # 20] are **DENIED AS MOOT**;

(3) the Clerk of the Court **SHALL REFUND** any *pro hac vice* fee paid by or on behalf of Mr. Farmer; and

(4) judgment will be entered contemporaneously with this opinion and order.

### *JUDGMENT*

In accordance with the opinion and order entered contemporaneously with this judgment, the Court **HEREBY ORDERS AND ADJUDGES** that:

(1) plaintiff's declaratory judgment action is **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to refile the same in Madison Circuit Court or another state court of competent jurisdiction;

(2) the Court having no subject matter jurisdiction over plaintiff's interpleader claims, the same are **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to refile in Madison Circuit Court or another state court of competent jurisdiction;

(3) each party **SHALL BEAR** their own costs;

(4) this judgment is final and appealable and no just cause for delay exists; and

(5) this matter is **STRICKEN** from the active docket of the Court.