**Glen C. WATSON, III,
Trustee, Plaintiff,**

v.

**Diana L. Day CARTEE; Alan Cartee,
Defendants–Appellants,**

**Regions Bank; Henry Preston Ingram,
Defendants–Appellees.**

No. 15–5556.

United States Court of Appeals,
Sixth Circuit.

Argued: Jan. 27, 2016.

Decided and Filed: March 21, 2016.

**ARGUED:** Thomas I. Bottorff, Bottorff & Kavin, PLC, Brentwood, Tennessee, for Appellants. David M. Anthony, Bone McAllester Norton PLLC, Nashville, Tennessee, for Appellee Ingram. Aaron J. Nash, Evans Petree PC, Franklin, Tennessee, for Appellee Regions Bank. **ON BRIEF:** Thomas I. Bottorff, Bottorff & Kavin, PLC, Brentwood, Tennessee, John A. Barney, Barney Law Firm, Franklin, Tennessee, for Appellants. David M. Anthony, Bone McAllester Norton PLLC, Nashville, Tennessee, for Appellee Ingram.

Before: GILMAN, WHITE, and STRANCH, Circuit Judges.

## OPINION

RONALD LEE GILMAN, Circuit Judge.

This is an unusual case in which former homeowners assert the potential claim of one of their creditors in a misguided bid to

challenge the foreclosure sale of their home, even though the creditor in question has itself declined to raise the claim. For the reasons set forth below, we **AFFIRM** the district court's judgment that ruled against the homeowners.

## I. BACKGROUND

### A. Factual background

In February 2002, Diana and Alan Cartee placed a deed of trust (the Citizens Deed of Trust) on their Nashville home (the Property) to secure a loan from Citizens Bank and Savings Company (Citizens) to refinance the Property. The deed was recorded with the Davidson County Register of Deeds (the Register's Office) that same month. Although the acknowledgement on this deed declares that it was acknowledged in Alabama, the parties do not dispute that the deed was in fact executed and acknowledged in Tennessee.

In April 2002, the Citizens Deed of Trust was rerecorded with the Register's Office. The acknowledgment on the rerecorded deed was revised to change "Alabama" to "Tennessee" and to add "Davidson" into the previously blank space for the name of the county. This rerecorded deed also included a note on the first page declaring that "THIS DOCUMENT IS BEING RERECORDED TO ADD THE DERIVATION CLAUSE AND TO CORRECT THE NOTARY ACKNOWLEDGMENT." But the rerecorded Citizens Deed of Trust was not reexecuted or acknowledged by the Cartees, nor did they have any knowledge of the rerecording.

In January 2004, the Cartees and AmSouth Bank—now Regions Bank—entered into a credit agreement secured by a second deed of trust (the Regions Deed of Trust) on the Property. The Regions Deed of Trust was recorded in the Register's Office in February 2004. Subsequent

to 2005, various other liens on the Property were recorded with the Register's Office: specifically, four federal tax liens, three judgment liens, and one mechanic's and materialman's lien.

Several years later, the Cartees defaulted on their mortgage loan with Citizens. This caused Citizens and the Cartees to enter into several forbearance agreements over the course of 2011 and 2012 in an attempt to remedy the default. The Cartees, however, ultimately defaulted on their forbearance-agreement obligations, and Diana Cartee filed for bankruptcy. Following the conclusion of Diana Cartee's bankruptcy case, Glen Watson, acting as Substitute Trustee under the Citizens Deed of Trust, scheduled a foreclosure sale of the Property for July 2013. The foreclosure sale was continued several times as a result of the Cartees filing an action in state court to prevent the foreclosure sale.

In November 2013, the Cartees' state-court lawsuit was dismissed. Watson then conducted a foreclosure sale of the Property in December 2013. At the foreclosure sale, Henry P. Ingram submitted the highest bid and, after he paid Watson $1,513,000, Watson conveyed the Property to him in the form of a Substitute Trustee's Deed. The proceeds from the foreclosure sale satisfied the Cartees' debt to Citizens and also resulted in a surplus of $281,632.74.

### B. Procedural background

In January 2014, to determine the appropriate allocation of the surplus proceeds, Watson filed the instant interpleader action in Tennessee state court against the Cartees and the various lienholders having an interest in the Property, including Regions and the United States. The United States timely removed this action to the United States District Court for the Middle District of Tennessee. After pay-

ing the surplus proceeds into the district court, Watson was dismissed from the interpleader action in May 2014.

Later in May, Regions filed a motion for summary judgment, arguing that it had the highest priority claim to the surplus proceeds. The Cartees subsequently filed a third-party complaint against Ingram, alleging that he did not hold valid title to the Property because of the defect in the acknowledgment of the Citizens Deed of Trust. They also filed a response to Regions's motion, raising almost identical arguments to those advanced in their third-party complaint. In December 2014, Ingram filed a motion for summary judgment on the third-party complaint, and the Cartees filed their own motion for summary judgment on the third-party complaint in January 2015.

The next month, the district court (1) granted Regions's motion for summary judgment and awarded the surplus proceeds to Regions, (2) granted Ingram's motion for summary judgment, (3) denied the Cartees' motion for summary judgment, and (4) declined the Cartees' request to certify a state-law, statutory-interpretation question to the Tennessee Supreme Court. In March 2015, the Cartees filed a motion to alter the judgment, arguing—for the first time—that the court lacked jurisdiction over their own third-party complaint. The court denied the Cartees' motion the following month. This timely appeal followed.

## II. ANALYSIS

### A. Standards of review

■ We review de novo the existence of subject-matter jurisdiction. *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003). A district court's grant of summary judgment is also reviewed de novo. *Keith v. County of Oakland*, 703 F.3d 918, 923

(6th Cir.2013). Summary judgment is proper when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the decision to certify a question of state law to the state's highest court "lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir.2009) (internal quotation marks omitted).

### B. The district court possessed subject-matter jurisdiction over the Cartees' third-party complaint against Ingram

Before grappling with the Cartees' substantive claims, we must first deal with a procedural issue. The Cartees allege in their reply brief that the district court lacked subject-matter jurisdiction over their own third-party complaint, and that the third-party complaint violated Rule 14 of the Federal Rules of Civil Procedure. This is of course contrary to the position asserted in their third-party complaint. Concerning the Rule 14 claim, the Cartees are now in the ironic posture of advocating a position that Ingram raised before the district court.

■ A party ordinarily "waives an issue when he fails to present it in his initial briefs." *LoCoco v. Med. Sav. Ins. Co.*, 530 F.3d 442, 451 (6th Cir.2008) (internal quotation marks omitted). There is an exception to this general rule in the present case, however, because "parties cannot waive the requirement of subject matter jurisdiction." *Ammex*, 351 F.3d at 702 (internal quotation marks omitted). "If

the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3).

The existence of subject-matter jurisdiction over claims in a third-party complaint is a separate inquiry from whether impleader was proper under Rule 14. *See Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959) ("A rule of procedure, of course, however convenient and salutary it may be, is without efficacy to extend the jurisdiction of a court. But Rule 14 does not extend jurisdiction. It merely sanctions an impleader procedure...." (citations omitted)); *Gunnell v. Amoco Oil Co.*, 490 F.Supp. 67, 69 (W.D.Mich.1980) ("Rule 14 does not, in and of itself, confer subject matter jurisdiction to third-party claims."); Fed.R.Civ.P. 82 ("These rules do not extend or limit the jurisdiction of the district courts...."). Accordingly, although the Cartees' argument regarding subject-matter jurisdiction cannot be waived, their Rule 14 argument can and was. *See LoCoco*, 530 F.3d at 451.

Turning to the jurisdictional question, we conclude that the district court possessed supplemental jurisdiction over the third-party complaint. Supplemental jurisdiction under 28 U.S.C. § 1367 "allows a plaintiff to include claims over which a federal court would not normally have jurisdiction." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005). A district court's exercise of supplemental jurisdiction is proper so long as the original "complaint properly invokes the district court's jurisdiction and ... the other claims[ ] 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* (quoting 28 U.S.C. § 1367). For the purposes of § 1367, "[c]laims form part of the same

case or controversy when they derive from a common nucleus of operative facts." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir.2004) (internal quotation marks omitted).

### 1. The district court had subject-matter jurisdiction over the interpleader action under 28 U.S.C. §§ 1335 and 1441

We must first determine whether the district court possessed subject-matter jurisdiction over the interpleader action removed from state court. 28 U.S.C. § 1441 grants removal jurisdiction to district courts but, "[i]n order to invoke the district court's removal jurisdiction, a defendant must show that the district court has original jurisdiction over the action." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir.2000) (citing 28 U.S.C. § 1441(a)). In the present case, statutory interpleader provided the district court with original subject-matter jurisdiction. *See* 28 U.S.C. § 1335; *Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp.2d 689, 694 (E.D.Ky.2002) ("[S]tatutory interpleader provides an independent grant of subject matter jurisdiction.").

Under § 1335, district courts have original jurisdiction over any civil interpleader action contesting a fund of $500 or more if two or more adverse claimants are of diverse citizenship. 28 U.S.C. § 1335(a)–(a)(1). The surplus proceeds from the foreclosure sale far surpass the statutory minimum of $500. In terms of the diversity element, unlike 28 U.S.C. § 1332, statutory interpleader requires only "minimal diversity." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) (holding that § 1335 "require[s] only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the cir-

cumstance that other rival claimants may be co-citizens" (footnote omitted)).

Thus, as long as at least two of the claimants to the surplus proceeds from the foreclosure sale are citizens of different states, the district court possessed original subject-matter jurisdiction over Watson's interpleader action. That requirement is met here because the Cartees are citizens of Tennessee and Regions is a citizen of Alabama. *See* 28 U.S.C. § 1332(c)(1) (declaring that "a corporation shall be deemed to be a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business"). The district court therefore had original subject-matter jurisdiction over the interpleader action under § 1335.

### 2. *The Cartees' third-party complaint and the interpleader action derive from a common nucleus of operative facts*

To conclude that the district court properly exercised supplemental jurisdiction over the Cartees' third-party complaint, we must next determine whether the third-party complaint and the interpleader action "derive from a common nucleus of operative facts." *Harper,* 392 F.3d at 209 (internal quotation marks omitted). The Cartees' third-party complaint asks the district court to "declare the rights and interests of the parties in and to the Property, which the Cartees verily believe is ... not vested in ... Ingram, but in the Trustee in the Deed of Trust that secures the Cartees [sic] loan with Regions."

In other words, an adjudication of the claims set forth in the Cartees' third-party complaint would require a determination of whether Citizens possessed title to the Property when it foreclosed and, correspondingly, of the relative priorities of the various liens on the Property. The operative facts necessary to resolve the merits of the third-party complaint are therefore common to those needed to resolve the proper distribution of the surplus proceeds that resulted from the foreclosure sale. As the district correctly noted in denying the Cartees' motion to alter the judgment, this conclusion is bolstered by the fact that "the Cartees raised the *same* substantive legal issues concerning the validity of the Citizens Deed of Trust in opposition to the interpleader action as they did in the Third–Party Complaint." *Watson v. Cartee,* Civil No. 3:14–CV–00580, 2015 WL 1825452, at *2 (M.D.Tenn. Apr. 22, 2015) (emphasis in original).

### C. The Cartees' claim that the Regions Deed of Trust had priority over the Citizens Deed of Trust fails because they cannot assert Regions's rights when Regions itself has not raised them

Before proceeding further, a description of what the Cartees *do not dispute* on appeal will prove helpful to our analysis. They do not dispute that (1) they executed the Citizens Deed of Trust, (2) the lien placed on the Property is valid as between Citizens and themselves, or (3) they were in default on their mortgage loan. The Cartees, moreover, would not have succeeded even if they had challenged the validity of the Citizens lien because a deed of trust has "effect between the parties to the same, and their heirs and representatives, without registration." Tenn.Code Ann. § 66–26–101. Accordingly, because Ingram's title is derivative of Citizens's, the Cartees cannot successfully argue that their claim to title is superior to his.

The Cartees instead claim that the deed that Ingram received did not convey valid title to the Property because the Regions Deed of Trust had priority over the Citizens Deed of Trust based on the defective acknowledgement in the latter deed.

Counsel for the Cartees stated at oral argument that their position is that legal title to the Property is properly vested in the trustee of the Regions Deed of Trust. In other words, the Cartees are essentially asserting the purported rights of Regions vis-à-vis Citizens and Ingram.

Regions, however, did not raise this issue either before the district court or on appeal. As Ingram's brief, which was adopted by Regions, notes: "Regions has never contested the validity and priority of [the Citizens] Deed of Trust; instead, Regions has only sought (and received) payment of" the surplus proceeds from the foreclosure sale. Regions's counsel confirmed this position during oral argument by stating that "the fundamental matter here with respect to Regions Bank is merely the disbursement of the surplus proceeds."

■ Despite Regions's failure to raise this issue, the Cartees argue that the foreclosure sale would be invalid if we concluded that the Regions Deed of Trust had priority over the Citizens Deed of Trust because Citizens would not have possessed valid title on which to foreclose. But this argument does not hold water. Even if Citizens's lien were inferior to Regions's, a junior lienholder can foreclose on a deed. *See Davidson v. Bank of Friendship, Inc.,* No. W2003–01887–COA–R3–CV, 2004 WL 2533840, at *2 (Tenn.Ct.App. Nov. 5, 2004) (recognizing the propriety of foreclosing on a junior mortgage); *Bolerjack v. Fid. Fed. Sav. & Loan Ass'n,* No. 88–217–II, 1988 WL 126839, at *8 (Tenn.Ct.App. Nov. 30, 1988) (same). The consequence would simply be that Ingram's title would be subject to Regions's lien. *See Davidson,* 2004 WL 2533840, at *2 (noting that "a purchaser under a foreclosure sale takes subject to the senior mortgage[ ]" when the senior "mortgagee is not made a party to the action").

But Regions has effectively relinquished its lien in exchange for the surplus proceeds. (The Cartees make no claims with regard to any remaining debt owed to Regions pursuant to their credit agreement with Regions, and we express no opinion on that issue.) Accordingly, even if Regions's lien had priority over Citizens's lien, the foreclosure sale would have still gone forward, Ingram would still have title to the Property, the Cartees would still have no claim to the Property or the surplus proceeds, and the $1,513,000 sale proceeds would have still gone to their creditors to reduce their debts.

■ The Cartees therefore have no dog in this fight over deed priority. Consequently, the Cartees are not in a position to challenge the relative priority of the Citizens Deed of Trust versus the Regions Deed of Trust because, in so doing, they would be asserting Regions's rights instead of their own. *See Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("[T]he prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."); *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.,* 750 F.3d 573, 581–82 (6th Cir.2014) (applying prudential standing principles to a defendant who "defend[ed] against a claim by asserting a legal right belonging to a third party"); *Pahssen v. Merrill Cmty. Sch. Dist.,* 668 F.3d 356, 363 (6th Cir.2012) (noting "the general principle that plaintiffs must assert their own legal rights and interests, and cannot rest a claim to relief on the rights or interests of third parties"); *In re Adoption of M.J.S.,* 44 S.W.3d 41, 60 n. 6 (Tenn.Ct.App.2000) ("[A]s a general rule, a litigant does not have standing to assert another person's legal rights."). The Cartees' claim regarding the acknowledgement defect therefore fails.

But this conclusion does little to dissipate the perplexing atmosphere enveloping this case. What, after all, are the Cartees fighting for, given that they no longer have a claim of title to the Property and do not dispute the validity (as opposed to the priority) of the various liens? Although the Cartees' appellate briefing fails to elucidate this puzzle, their counsel provided a path through the fog by asserting at oral argument that the foreclosure sale was commercially unreasonable because the Property was sold for $1,513,000 despite allegedly being worth $2,500,000 to $3,000,000.

. We therefore deduce that the Cartees' true goal is to invalidate the foreclosure sale in the hope that the Property will be resold at a higher price, with the extra money going towards defraying the debts still owed to their other creditors. Unlike their argument concerning the relative priority of the Citizens Deed of Trust versus the Regions Deed of Trust, the Cartees actually have a stake in this commercial-reasonableness argument because they stand to gain something—a reduction in their debts—if their argument prevails. The Cartees, however, did not raise a commercial-reasonableness argument in their initial appellate brief. We therefore decline to reach the merits of this argument because the Cartees have waived it. *See LoCoco v. Med. Sav. Ins. Co.,* 530 F.3d 442, 451 (6th Cir.2008).

**D. Whether the district court abused its discretion by failing to certify a question to the Tennessee Supreme Court is moot**

This brings us to the final issue raised by the Cartees: the district court's failure to certify a state-law, statutory-interpretation question to the Tennessee Supreme Court. The decision to certify a question of state law to the state's highest court

"lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co.,* 553 F.3d 447, 449–50 (6th Cir.2009) (internal quotation marks omitted). In this case, the statute in question is Tenn.Code Ann. § 66–24–101(e), which was enacted in 2005 to provide that an otherwise validly recorded instrument that was not properly acknowledged shall nevertheless place "all interested parties ... on constructive notice of the contents of the instrument." Tenn.Code Ann. § 66–24–101(e)(2). No Tennessee court has decided whether this statute applies to a determination of the relative priority of two deeds of trust that were both recorded before the effective date of the statute, which is the exact situation as between the Citizens Deed of Trust and the Regions Deed of Trust.

Despite this interpretative vacuum, we need not determine whether the district court abused its discretion in light of the fact that Regions has made no claim of priority over Citizens, and the Cartees have no right to assert the claim on Regions's behalf. Any conclusion regarding the effect of the defective acknowledgment in the Citizens Deed of Trust on the potential priority of the Regions Deed of Trust would therefore not be dispositive of this case. Accordingly, we decline to reach the issue of the district court's failure to certify the question of Tenn.Code Ann. § 66–24–101(e)'s application to the present case because that question is moot.

But this should not be read as an endorsement of the district court's conclusion that Tenn.Code Ann. § 66–24–101(e) applies to a determination of the relative priority of two deeds of trust that were both recorded before the effective date of the statute. In fact, we have doubts concerning the accuracy of that conclusion in light of language in § 66–24–101(f) that precludes the application of § 66–24–101(e)

where "the relative priorities of conflicting claims to real property were established at a time prior to June 6, 2005." Tenn.Code Ann. § 66–24–101(f).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.